## MICHAEL F. BROWN *v.* K.N.D. CORPORATION ET AL.
### (3016)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued November 8, 1985—decision released May 20, 1986

*John F. McKenna,* with whom, on the brief, was *Peter Facey,* for the appellant (plaintiff).

*Sydney T. Schulman,* with whom, on the brief, was *William P. Lane,* for the appellee (defendant Wilbur Smith).

DuPont, C. J. The plaintiff, Michael F. Brown, has appealed from a judgment rendered for the defendant Wilbur Smith, after a trial to the court. The plaintiff sought damages for libel arising from a statement made during a radio broadcast.[1] The defendant K.N.D. Corporation was the owner and operator of radio station WKND, and the defendant Wilbur Smith was the host of a public affairs program on that station.[2]

The plaintiff's revised complaint alleged that on December 16, 1979, the defendant Wilbur Smith made the following statement during a radio broadcast of "What's On Your Mind" aired by WKND. "The [Ku Klux] Klan has not only sympathizers who are willing to march with them but they also have sympathizers in the Chamber of Commerce, they have them in these banks and insurance companies and they are sympathizers. They are in state government, they are in City Hall right now ah if Mr. Peach isn't one of them Mike Brown is a sympathizer of the Klan if he is not a member. Now if he wants to sue me about it then we go into his record and racist activity that he has been putting out in this City."

The complaint further alleged that the statement was false and malicious, that the plaintiff was not a member or sympathizer of the Ku Klux Klan, and that the defendant knew the statement was false or made it with reckless disregard of its truth. Other allegations were that the Ku Klux Klan was a racist organization which condones force and violence to further segregationist goals, that the defendant's statement held the plain-

---

[1] The law relating to broadcasting of defamatory matter by means of radio is the same as the law relating to a publication appearing in a newspaper. See 3 Restatement (Second), Torts § 568A; see also *Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 611–12, 116 A.2d 440 (1955).

[2] The trial court rendered a default judgment against the defendant K.N.D. Corporation for failure to appear at trial. K.N.D. Corporation is not involved in this appeal. As used in this opinion, the defendant refers to Wilbur Smith.

tiff up to public ridicule, hatred and contempt, that the plaintiff had mailed a letter to the defendant asking for a retraction in as public a manner as that in which the statement was made, that the defendant did not retract the statement, and that the statement caused and will continue to cause the plaintiff great damage to his personal and professional reputation.

The defendant raised three special defenses. He alleged that the plaintiff was a public official and, therefore, the defendant's statement was protected by the first amendment to the constitution of the United States and by article first, § 4 of the constitution of Connecticut[3] because it was neither knowingly false nor made in reckless disregard of the truth. He also claimed that the statement was a privileged communication and that it was fair comment.

The trial court found that the statement was false and libelous per se, and that the defendant had not sustained his burden of proving his defense of fair comment. It also found that the plaintiff, then an assistant city manager, was a "public official" as defined in *Rosenblatt* v. *Baer*, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966), and as such could not recover damages for the defamatory falsehood because he failed to sustain his burden of proving by clear and convincing evidence that the statement was made with actual malice. See *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). On appeal, the plaintiff claims that the trial court erred in holding that the plaintiff was a public official and in finding that the defendant did not act with actual malice.

---

[3] Although the defendant specifically invoked the free speech provision of the Connecticut constitution in his special defense, the case was tried and decided in the trial court, and briefed and argued in this court, solely with reference to federal constitutional principles. The defendant does not claim that the Connecticut constitution provides him with more protection than does the federal, and we have confined our review to federal constitutional principles.

The first issue of this appeal is whether the plaintiff is a "public official" within the meaning of *New York Times Co.* v. *Sullivan,* supra, and as defined by *Rosenblatt* v. *Baer,* supra, 84–85.[4] Whether a party is a public official is an issue to be resolved with reference to standards set by federal law. Id., 84. A public official is defined as a person within the hierarchy of government "who [has], or appear[s] to the public to have, substantial responsibility for or control over the conduct of governmental affairs." (Footnote omitted.) Id., 85. "Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . the *New York Times* malice standards apply." (Footnotes omitted.) Id., 86. "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." Id., 86–87 n.13.

There is no substantial dispute as to the facts surrounding the plaintiff's employment. The plaintiff was one of four assistant city managers in the city of Hartford who, by his own admission, shared responsibility for the budget, management services, data processing and personnel. He also acted on behalf of the city manager at meetings of city council subcommittees and

[4] The plaintiff, in his brief, argues that the trial court's finding that he was a public official should be the subject of an independent review of the entire record by this court in accordance with the mandate of *Bose Corporation* v. *Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984). During oral argument, he abandoned this argument, conceding that the defendant's interpretation of *Bose* as to this issue was correct, that is, that independent appellate review of the record in defamation cases is limited to whether actual malice has been established with convincing clarity.

addressed city groups. It is clear that such a position would invite public scrutiny entirely apart from the statements made by the defendant. Employees at lower levels of government have been held to be public officials. See *Moriarty* v. *Lippe,* 162 Conn. 371, 294 A.2d 326 (1972) (patrolman); *Ryan* v. *Dionne,* 28 Conn. Sup. 35, 248 A.2d 583 (1968) (tax collector). The trial court was correct in finding that the plaintiff, as an assistant city manager of the city of Hartford, is a public official for first amendment purposes.[5]

The significance of this finding is that it establishes the standard of proof which governs the case. A public official may not recover damages for a defamatory falsehood unless he proves by clear and convincing evidence that the defamatory falsehood was published with actual malice, that is with knowledge that the statement was false or with reckless disregard for its falsity. *New York Times Co.* v. *Sullivan,* supra.[6] The rule for private individuals seeking defamation damages is not the same. The first Supreme Court decision after *New York Times* relating to a private individual stated that a private individual in an action for defamation, need only prove a negligent misstatement of fact. *Rosenblatt* v. *Baer,* supra, 84. That doctrine was refined and expanded by subsequent decisions. As long as the individual states do not impose liability without fault, they may define for themselves the standard of liability for

[5] At oral argument, counsel for the appellant directed our attention to *Bufalino* v. *Associated Press,* 692 F.2d 266, 273 n.5 (2d Cir. 1982) and suggested that the expansion of the definition of a "public official" would deter persons from accepting government employment. Footnote five in *Bufalino* refers to minor town officials. Brown occupied the second highest position of city government in Hartford. He was not a minor town official.

[6] A public figure, as opposed to a public official, can recover damages for a defamatory falsehood upon a showing of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 158, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967).

recovery of *compensatory* damages for a defamatory falsehood made about a public matter which injures a private individual, without federal hindrance. *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 347–50, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). A private individual about whom a statement of public concern is made, however, must show actual malice in order to recover *punitive* damages for a defamatory falsehood. If a statement is of exclusively private concern and refers to a private figure, the common law controls and actual malice need not be proven in order to recover punitive or compensatory damages. *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985). The burden of proving that a statement is false in an action by a private figure about a statement of public conern is on the private figure plaintiff. *Philadelphia Newspapers, Inc.* v. *Hepps,* 472 U.S. 1025, 105 S. Ct. 3496, 87 L. Ed. 2d 628 (1985).

In this case, the plaintiff, as a public official, cannot prevail in his action for defamation unless he can prove actual malice with clear and convincing evidence, and that the statement about him was both defamatory and false. *New York Times Co.* v. *Sullivan,* supra. Therefore, we must resolve the second issue of this appeal which is whether the trial court erred in finding that the plaintiff failed to prove actual malice by clear and convincing evidence. Actual malice is defined, as previously noted, as knowledge that the statement was false, or made with reckless disregard of whether it was false or not. *New York Times Co.* v. *Sullivan,* supra, 279–80.

In the more than the score of years which has passed since the Supreme Court established in the *New York Times* case that a federal standard must be used in actions involving public officials to define the appropriate accommodation between the law of defamation and the freedoms of speech and press protected by

the first amendment to the constitution of the United States, that court has, in succeeding cases, sharpened the words "reckless disregard of whether it was false or not." "Reckless disregard" for falsity of statements has been equated with a "high degree of awareness of their probable falsity"; *Garrison* v. *Louisiana,* 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964); or a reckless publication made despite an awareness of its probable falsity; *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 153, 87 S. Ct. 1975, 18 L. Ed. 2d 1094, reh. denied, 389 U.S. 889, 88 S. Ct. 11, 13, 19 L. Ed. 2d 197, 198 (1967); or the entertainment of serious doubts as to truth of the publication. *St. Amant* v. *Thompson,* 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968); see *Bose Corporation* v. *Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984).

In order to determine whether the trial court erred in its finding of actual malice, we must first determine the proper appellate standard of review. Although appellate courts ordinarily do not disturb the facts as found by a trial court unless the finding of facts is clearly erroneous; see Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Jackson* v. *Jackson,* 2 Conn. App. 179, 195, 478 A.2d 1026 (1984); in cases involving defamation of public officials, an independent review of the trial court's finding of actual malice is mandated. See *New York Times Co.* v. *Sullivan,* supra, 285.

Federal cases concerning defamation actions brought by public officials decided since the landmark *New York Times* case have uniformly followed its mandate of independent appellate review. That case established that it is the duty of appellate courts to review the evidence to make certain that, upon examination of the whole record, it can be concluded that there was no forbidden intrusion on free expression. *New York Times Co.*

v. *Sullivan,* supra, 285. This review is limited to the proof presented to show actual malice by convincing clarity. In all of the United States Supreme Court cases decided since *New York Times,* there has been a painstaking review by that court of the subordinate facts which led the trier of fact to conclude that actual malice did or did not exist. See, e.g., *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra; *St. Amant* v. *Thompson,* supra; *Curtis Publishing Co.* v. *Butts,* supra; *Rosenblatt* v. *Baer,* supra. Other federal courts have engaged in the same independent appellate review of the facts in determining whether actual malice was present. *Herbert* v. *Lando,* 781 F.2d 298 (2d Cir. 1986); *Bartimo* v. *Horsemen's Benevolent and Protective Assn.,* 771 F.2d 894 (5th Cir. 1985); *Hardin* v. *Santa Fe Reporter, Inc.,* 745 F.2d 1323 (10th Cir. 1984); *Maheu* v. *Hughes Tool Co.,* 569 F.2d 459 (9th Cir. 1978); *Hotchner* v. *Castillo-Puche,* 551 F.2d 910 (2d Cir. 1977); *Buckley* v. *Littell,* 539 F.2d 882 (2d Cir. 1976).

State courts have also consistently abandoned the clearly erroneous standard in defamation cases in which the federal constitutional principle of the *New York Times* case is involved, using instead the independent appellate review standard to determine whether actual malice was present. See *Goodrich* v. *Waterbury Republican American, Inc.,* 188 Conn. 107, 108, n.1, 448 A.2d 1317 (1982); see also *Hansen* v. *Stoll,* 130 Ariz. 454, 636 P.2d 1236 (1981); *Myers* v. *Boston Magazine Co.,* 380 Mass. 336, 403 N.E.2d 376 (1980).

The Restatement of Torts also is in accord. A finding on the issue of whether the defendant acted knowing that his statement was false or in reckless disregard of its truth or falsity is subject to close appellate scrutiny and an appellate court is free to find that the evidence is constitutionally inadequate to sustain the finding. 3 Restatement (Second), Torts § 580A, comment g. The constitutional adequacy of the evidence

to sustain a finding of knowledge that a statement is false or that it was made in reckless disregard of whether it was false should be the subject of an independent and careful appellate review of the facts. 3 Restatement (Second), Torts § 580A, comment g (appendix 1981).

As a general rule, findings of fact are reviewed under the clearly erroneous standard. If, however, the review is of the finding by the trial court of actual malice in a defamation case involving a public official, a scrutiny of that finding is mandated and the scrutiny requires not only a reexamination of the evidentiary basis of the trial court's finding but an independent appellate determination of that finding itself. See *Herbert* v. *Lando,* supra; *Buckley* v. *Littell,* supra, 888. We conclude that this independent review does not depend, as the defendant contends, upon a finding by the trial court that the defendant's speech was not protected by the first amendment, that is where the trial court found actual malice to have been proven. This independent appellate review extends as well to the situation of this case where the trial court found that actual malice had not been proven. It is our appellate responsibility here to take the subordinate facts as found by the trial court and then to make our own independent determination of whether, on the basis of those facts, the plaintiff has established actual malice, as defined above, with convincing clarity.

In the *Bose* case, the United States Supreme Court decided that Rule 52 (a) of the federal rules of civil procedure, the counterpart to our Practice Book § 3060D establishing the clearly erroneous standard, does not govern appellate review of the finding of actual malice. "The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact."

*Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 511. The defendant claims that *Bose* only applies when the trial court has found that the statement was not protected by the first amendment, that is, when the court has found that actual malice existed, thereby denuding the defendant of his first amendment shield of free speech. The defendant, therefore, argues that since, in this case, the trial court found that the defendant's statement was protected by the first amendment, we may not independently review the factual underpinnings of the trial court's conclusion that actual malice was not present.

On the basis of two recent cases, we determine that our appellate duty requires an independent review of the finding of actual malice regardless of whether the trial court did or did not find actual malice. In *Hardin* v. *Santa Fe Reporter, Inc.,* supra, a complaint for libel was dismissed after a trial on the merits. The appellate court upheld the trial court's action, after reviewing its finding that actual malice did not exist. Although the independent review substantiated the trial court's finding that the defendant's speech was protected, the appellate court nevertheless conducted the review. The case of *Bartimo* v. *Horsemen's Benevolent and Protective Assn.,* supra, establishes the same necessity for independent review, regardless of whether the trial court did or did not find actual malice, or did so specifically rather than sub silentio as in *Hardin.* The *Bartimo* case held that independent appellate review is required in situations where no actual malice has been found by the trial court, and that the less exacting clearly erroneous standard of review would not suffice. The court stated that first amendment protection requires inclusion as well as exclusion and that a finding of inclusion within the protection of the first amendment is not less of a judicial function merely because no direct threat to the first amendment is involved.

Whether the speech in question is protected or unprotected does not alter the appellate court's obligation to make an independent evaluation of the constitutionally significant facts. The *Bartimo* court points out that the same independent review occurred in *Associated Press* v. *Walker,* the companion case of *Curtis Publishing Co.* v. *Butts,* supra, although the trial court in *Walker* had found no actual malice. Such a review allows some plaintiffs to maneuver successfully within the *New York Times* framework. *Bartimo* v. *Horsemen's Benevolent and Protective Assn.,* supra, 901.

Independent appellate review of a trial court's findings of fact in some classes of cases is not a novel jurisprudential brainstorm of the *New York Times* court, or of the *Bose* court. Although the first amendment presupposes the freedom to speak freely, certain categories of speech remain outside first amendment protection, and those categories have been subjected to independent appellate review. See *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra, 503–505. Such categories include not only libel, but fighting words; *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); incitement to riot; *Brandenburg* v. *Ohio,* 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) (per curiam); and obscenity; *Roth* v. *United States,* 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). Most recently, the category has been expanded to include independent federal appellate review of a finding of voluntariness of a confession. *Miller* v. *Fenton,* 474 U.S. 104, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). Justice O'Connor, speaking for a nearly unanimous court, with only Justice Rehnquist dissenting, stated that the court has a historic duty to make an independent evaluation of the record in a federal habeas corpus proceeding to review a state court's finding that the defendant's confession

was voluntary.[7] The issue to be decided in *Miller* was whether the voluntariness of the confession was factual and therefore subject to 28 U.S.C. § 2254 (d) which provides that state court findings of facts must be presumed to be correct. If the statute controlled, federal review would be limited to whether the state court had applied the proper legal test and whether its factual conclusions were supported by the record. If, however, the finding was one of law, it would be given an independent federal review. The court held that the voluntariness of a confession is a question of law, although subsidiary questions involved in that determination are questions of fact.

A finding might be characterized as one of fact or law, or one of mixed fact and law and the appropriate methodology for the determination is always elusive. *Miller* v. *Fenton,* supra, 451; see *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra. Such a characterization usually turns on which court is better positioned to decide the question rather than on an analysis of its essential quality. "Where, for example, as with proof of actual malice in First-Amendment libel cases, the relevant legal principle can be given meaning only through its application to the particular circumstances of a case, the Court has been reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip a federal appellate court of its primary function as an expositor of law." *Miller* v.

[7] The recent case of *State* v. *Wilson,* 199 Conn. 417, 438, 513 A.2d 620 (1986), states that whether or not a defendant has requested counsel prior to making a statement is a question of fact for the trial court and that it is preferable for an appellate court to refrain from choosing between two contradictory findings of fact by the trial court, either of which is capable of support in the evidence. It, therefore, remanded the case for a relitigation of whether the defendant had requested counsel. The decision is silent as to whether the ultimate issue of the voluntariness of the confession, had that question been reached, would have required an independent appellate review. See *Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378, reh. denied, 452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981).

*Fenton,* supra, 452. Independent appellate review is, therefore, sometimes required. When an assessment of credibility and demeanor are not critical to an ultimate finding of a fact of constitutional proportion because conflicting testimony need not be evaluated, that ultimate finding of fact of a trial court usually leaves the clearly erroneous realm and enters the domain of independent appellate review. See *Miller* v. *Fenton,* supra.

Having concluded that we must independently review the trial court's failure to find actual malice, we turn to an analysis of that finding. In reviewing that finding, we rely upon the underlying factual findings of the trial court as well as the testimony of the defendant. Those subsidiary factual findings of the trial court which form the basis for its finding of the ultimate question of actual malice are subject to the clearly erroneous rule of Practice Book § 3060D. See *Bose Corporation* v. *Consumers Union of United States, Inc.,* supra. Those subsidiary facts are accepted by us in this case. *St. Amant* v. *Thompson,* supra, 727.

The trial court found the following subordinate facts. The defendant made the statement about the plaintiff who was a public official in a radio broadcast. The plaintiff mailed a certified letter to the defendant demanding a retraction, but no retraction was ever made. The statement was defamatory and tended to harm the reputation of the plaintiff in the estimation of the community or deterred others from associating or dealing with him. The objectives of the Ku Klux Klan are an anathema in a democratic society, and the group has resorted to violence and intimidation to further its goals of racial segregation. The defendant's statement was reasonably capable of being understood as stating that, at the very least, the plaintiff agreed with the goals and objectives of the Ku Klux Klan or was a member of it. Harm to the plaintiff's reputation was likely and

the allegation of membership or sympathy with the goals of the Ku Klux Klan really meant that the plaintiff supported genocide. The statement cast doubt on the integrity of the plaintiff and his willingness and ability to administer the city's business free from invidious considerations of race, and the allegation would likely cause the plaintiff diffficulty in pursuing his profession. The statement was false and was more than a statement that the plaintiff is an "unconscious" racist. The defendant had no facts to support the statement and he "ought to have realized that reasonable persons might have understood it to imply more than an allegation of unconscious racism." None of these facts found by the trial court is clearly erroneous, and, in fact, all are amply supported by the evidence.

The trial court also found that the defendant's words were defamatory, libelous per se and not defensible as fair comment. These conclusions are supported by the underlying facts found. The trial court also found that the plaintiff had not proven actual malice because the statement said more than the defendant intended and was uttered extemporaneously. Our independent review, however, of the trial court's ultimate conclusion that the facts did not establish actual malice, leads us to conclude otherwise. Our review of the facts found and our review of the defendant's own trial testimony establish that actual malice was proven with convincing clarity. We conclude that the defendant's statement was made with reckless disregard of its falsity, recognizing that "reckless disregard" is a standard which is susceptible only of a case-by-case definition. See *Bartimo* v. *Horsemen's Benevolent and Protective Assn.,* supra, 898.

The trial court, in holding that the statement was libelous per se, implicitly found that the statement was one of fact rather than opinion. The statement of the defendant was that the plaintiff was a Klan sympathizer

if he was not a member of the Ku Klux Klan. Allegations of membership in an identifiable group or of an affiliation with such a group are facts which are susceptible of proof or disproof of their falsity. *Buckley* v. *Littell,* supra, 894. False statements of fact about a public official are not privileged whereas false statements of opinion are protected by the first amendment to the United States constitution. See *Gertz* v. *Robert Welch, Inc.,* supra, 339. As noted, the trial court impliedly found the defendant's statement to be one of fact since it found that the statement was not privileged as fair comment and was libelous per se. Furthermore, the defendant's entire statement inferred that his allegation of the plaintiff's membership in or sympathy with the Klan was provable by going "into his [the plaintiff's] record and racist activity." The defendant's remarks, even if they were construed as his opinion rather than his expression of a fact, were libelous as an expression of a derogatory opinion about the plaintiff based upon the defendant's own alleged knowledge of the plaintiff's record and racist activity in Hartford. See *Hotchner* v. *Castillo-Puche,* supra, 913; 3 Restatement (Second), Torts § 566.

The ordinary meaning of the defendant's language that "Mike Brown is a sympathizer of the Klan if he is not a member" is that at the very least Brown agreed with the Klan's goals and objectives even if he were not actually a member.

The defendant testified that he did not believe at the time he made the statement that the plaintiff was a member of the Ku Klux Klan or a conscious sympathizer of it. He further testified that he would not, as of the time of trial, retract the statement, that he had told the station manager of K.N.D. Corporation that he could prove his statement, that the plaintiff is a sympathizer of the Klan, if not a member, that he thought about the statement before he made it, and that

at the beginning of the program he knew he was going to talk about the Klan. The defendant admitted that he had no evidence that the plaintiff was a member of the Klan, adding that he had no evidence that he was not a member. He stated that the work in which the plaintiff was engaged encouraged the Klan, and that the plaintiff was an unconscious sympathizer of the Klan. His testimony was that the statement he made was "precisely what I meant to say."

The trial court in its memorandum of decision stated that there was no evidence from which it could conclude that the defendant knew that his statement was untrue when he made it. The record, however, shows that the defendant testified that he knew his statement was untrue when he made it, and that the statement was exactly what he meant to say. The defendant refused to retract the statement he had made, even as of the date of his trial testimony. His refusal to do so was, in effect, a reaffirmation of it, after he knew that it was false and defamatory, and may be treated as evidence of his reckless disregard of its falsity as of the time he made the statement. See 3 Restatement (Second), Torts § 580A, comment d. The Supreme Court of the United States has recognized that it is possible to use a failure to retract as evidence of actual malice. See *New York Times Co.* v. *Sullivan,* supra, 286; see also *Golden Bear Distributing Systems of Texas, Inc.* v. *Chase Revel, Inc.,* 708 F.2d 944, 950 (5th Cir. 1983).

The trial court concluded that the defendant ought to have realized that his statement implied more than "unconscious racism." The defendant testified that the plaintiff was an unconscious sympathizer of the Klan. A "sympathizer" is a person having common feelings, or an affinity or association or relationship with another and encompasses his inclination to think alike, to be loyal to, and to support another. Webster, Third New International Dictionary. "Unconscious" is defined as

the state of being unaware, unknowing, or not deliberate. Id. An "unconscious sympathizer" of the Klan is, therefore, a person who is unaware that he has common feelings of support or alliance with the Klan. Although it might be possible for a person from another society to be unaware that he sympathized with the Klan, it defies common sense to believe that the plaintiff could be an "unconscious" sympathizer with it in 1979 in Hartford, Connecticut. As the trial court stated, "[t]here is little doubt that a substantial number of persons in the greater Hartford area would view [the Klan] as a discreditable organization . . . there [is] no disagreement that the objectives of it are [an] anathema to a democratic society, [and] that the Klan has resorted to violence and intimidation to further its goal of racial segregation." The defendant himself admitted that the Klan was known as racist.

The record indicates that at the very least the defendant entertained serious doubts about the truth of his statement. Any supposed "good faith" arising out of a claim that he really meant to say that the plaintiff was an *unconsicous* sympathizer of the Klan, even if we assume that such is possible, is dissipated since the only basis he had for the statement as made or as qualified was his own perceptions and assumptions. "[G]ood faith will be unlikely . . . . to prevail when the [speaker's] allegations are so inherently improbable that only a reckless man would have put them in circulation." *St. Amant* v. *Thompson,* supra, 732. Only a reckless person would publicly disseminate the statement as made. The defendant's "in pectora" adjectival modification of "sympathizer" by the word "unconscious" does not suffice to lead us to any other conclusion than that, by clear and convincing evidence, he made a defamatory statement about the plaintiff with reckless disregard as to whether it was true or false. Our independent review compels us to conclude that

the defendant acted with actual malice as defined by *New York Times Co.* v. *Sullivan,* supra.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the plaintiff on the issue of liability and to conduct a hearing in damages.

In this opinion the other judges concurred.