## MICHAEL F. BROWN *v.* EMPLOYER'S REINSURANCE CORPORATION (13151)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued December 11, 1987—decision released March 29, 1988

*John F. McKenna,* for the appellant (plaintiff).

*Duncan B. Hume,* for the appellee (defendant).

CALLAHAN, J. The plaintiff, Michael F. Brown, has filed this appeal from a judgment of the trial court, *Susco, J.,* wherein the court found that the defendant's assured, the K.N.D. Corporation (KND), had materially breached the terms of the libel insurance policy issued by the defendant, Employer's Reinsurance Corporation (Employer's), and consequently, that the plaintiff could not recover from the defendant under General Statutes § 38-175.[1] The principal issue raised by the plaintiff is whether the trial court erred in finding that KND had materially breached its insurance contract with the defendant by failing to appear at trial and at the hearing in damages in the prior libel action brought by Brown against KND and Wilber Smith, a KND radio show host, who allegedly libeled the plaintiff on the air. *Brown* v. *K.N.D. Corporation,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 80 0242122S (1980).

The relevant facts are not in dispute. In early 1980, Michael F. Brown brought a libel action against KND

---

[1] "[General Statutes] Sec. 38-175. LIABILITY OF INSURER UNDER LIABILITY POLICY. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

and its employee Wilber Smith for damages he sustained as a result of the alleged defamatory statements made during a radio broadcast by Smith. At the time KND maintained a libel insurance policy that had been issued by the Employer's Reinsurance Corporation. In the event an action was brought against KND that involved the policy, KND was required to notify Employer's immediately and to forward copies of all process served upon KND. The policy also required KND to employ counsel for the defense of such a suit and to file proper pleadings within the time required by law. Under the terms of the policy, the defendant would reimburse KND only after it had paid any loss incurred that was covered by the policy.

In accordance with these obligations, KND retained an attorney who entered an appearance on behalf of KND and began filing the appropriate responsive pleadings. During the course of this litigation, KND was unable to pay its creditors and was subsequently dissolved as a corporation under state law on November 5, 1981. On September 16, 1983, KND was defaulted by the trial court for its failure to appear at trial. At the close of the trial that proceeded against Smith, the trial court rendered a judgment in favor of the defendant Smith.[2] On June 25, 1984, after a hearing in damages against KND as a result of its default, at which KND again failed to appear, the trial court rendered a final judgment against KND in the amount of $95,000.

---

[2] The plaintiff appealed the judgment rendered in favor of the defendant Smith to the Appellate Court. The Appellate Court, on May 20, 1986, set aside the judgment of the trial court and ordered the case remanded with direction to render judgment for the plaintiff on the issue of liability and to conduct a hearing in damages. *Brown* v. *K.N.D. Corporation,* 7 Conn. App. 418, 435, 509 A.2d 533 (1986). Thereafter, Smith appealed to this court where we reversed the judgment of the Appellate Court and ordered the case remanded to that court with direction to remand the case to the trial court to render judgment for the defendant Smith. *Brown* v. *K.N.D. Corporation,* 205 Conn. 8, 16, 529 A.2d 1292 (1987).

After unsuccessful attempts to execute upon the judgment, Brown initiated the present action against the defendant under the provisions of Connecticut's "direct action" statute, General Statutes § 38-175. The defendant responded by asserting, inter alia, a special defense which alleged that KND had materially breached the contract of insurance by failing to appear at trial and at the hearing in damages. Consequently, the defendant alleged that because KND could not have maintained an action for reimbursement under the insurance contract, the plaintiff could not recover under § 38-175.

The trial court, *Susco, J.*, agreed and held that KND had in fact materially breached its contract by failing to appear at trial and defend the action, thus preventing a recovery by the plaintiff under § 38-175. The plaintiff on appeal argues that the trial court erred in (1) concluding that KND had materially breached the contract of insurance, and (2) finding that KND was not legally excused from performing its contract obligations under the principles of waiver, estoppel and laches.[3] We find no error.

I

The principal claim raised by the plaintiff is that the trial court erred in concluding that KND had materially breached the terms of the insurance policy by failing to appear at trial and at the hearing in damages, by failing to defend the action, and by failing to notify the defendant of its decision not to defend the action. The gravamen of the plaintiff's claim is that the court's conclusion is not supported by the evidence and is, in fact, contrary to the "undisputed or admitted" facts that appear on the record. We disagree.

---

[3] The trial court also found for the defendant on counts two and three of the complaint that, respectively, set forth claims under Connecticut's Unfair Trade Practices Act and Unfair Insurance Practices Act. The plaintiff has not raised these issues on appeal; therefore we need not address them.

General Statutes § 38-175 provides in pertinent part: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of . . . damage to the property of any person,[4] for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty." In addition, the statute provides that when a final judgment is rendered against the assured for loss or damage covered by the policy and the judgment remains unsatisfied for more than thirty days, then "the judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment." "[T]he legislature's purpose in enacting the 'direct action' statute was to remedy '[t]he unfairness to the assured of contracts of insurance' with provisions that the insurer should be liable only in cases where the assured had actually paid a judgment obtained against him. *Guerin* v. *Indemnity Ins. Co.,* 107 Conn. 649, 652, 142 A. 268 (1928). 'The intention of the Act is to give the injured person the same rights under the policy as the assured . . . .' Id., 653." *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 369, 446 A.2d 3 (1982). Thus, the statute protects those injured by judgment proof insureds, by subrogating the injured party or judgment creditor to the rights of the assured against the insurer. *Bourget* v. *Government Employ-*

---

[4] As part of its memorandum of decision dated January 29, 1987, the trial court ruled that damage or injury to one's reputation resulting from alleged defamatory remarks was "damage to the property of any person" within the meaning of General Statutes § 38-175. The parties have not raised this issue on appeal.

*ees Ins. Co.,* 287 F. Sup. 108, 110 (D. Conn. 1968), rev'd on other grounds, 456 F.2d 282 (2d Cir. 1972).

A party subrogated to the rights of an assured under § 38-175 obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy. *Arton* v. *Liberty Mutual Ins. Co.,* 163 Conn. 127, 139–40, 302 A.2d 284 (1972); *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 40, 202 A.2d 498 (1964); *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn 298, 305, 84 A.2d 267 (1951); *Goergen* v. *Manufacturers Casualty Ins. Co.,* 117 Conn. 89, 93, 166 A. 757 (1933); *Rochon* v. *Preferred Accident Ins. Co.,* 114 Conn. 313, 315–16, 158 A. 815 (1932). Consequently, in order for one to proceed under § 38-175, the insured must have had a viable statutory or contractual claim against the insurer; *Cook* v. *Collins Chevrolet, Inc.,* 199 Conn. 245, 255, 506 A.2d 1035 (1986); and where the insurer has raised the special defense that the insured materially breached the provisions of the contract of insurance, the judgment creditor suing under § 38-175 bears the burden of proving that the insured complied with his or her obligations contained therein. *O'Leary* v. *Lumbermen's Mutual Casualty Co.,* 178 Conn. 32, 38, 420 A.2d 888 (1979); *Arton* v. *Liberty Mutual Ins. Co.,* supra, 135; *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 519, 18 A.2d 397 (1941). It must also be noted that the insolvency of the insured is irrelevant as far as a plaintiff's rights of subrogation under § 38-175 are concerned. *Bourget* v. *Government Employees Ins. Co.,* 313 F. Sup. 367, 369 (D. Conn. 1970).

Here the contract of insurance specifically imposed upon KND the duty to hire counsel and file the appropriate pleadings within the time required by law in the defense of any action brought against KND that

involved the policy. In addition, the contract required that "[i]f the suit is brought to trial, the Assured shall conduct the defense thereof, but the Corporation, at its own election and expense, shall have the right to participate with the Assured in such defense." The policy also imposed a continuing duty on KND to forward to the defendant immediately all copies of process served upon it. There is no dispute that neither KND nor its counsel appeared at trial in September, 1983, or at the hearing in damages conducted in June, 1984. In fact, the limited record below indicates that KND did very little, if anything, with regard to the defense of the suit after the corporation's dissolution in November, 1981. It appears that KND's decision to walk away from the defense of the suit was a business decision based upon the advice of their attorney that a judgment rendered against the corporation was worthless because the corporation had been dissolved and all of its assets had been sold. There can be no question that KND's abandonment of the defense of the suit prior to trial was a material breach of its obligation under the insurance policy. Accordingly, we find that the trial court did not err in holding that KND materially breached the insurance policy by failing to defend the action at trial.

## II

The plaintiff next claims that, in the event the court finds a material breach of the contract, the principles of waiver, estoppel and laches[5] should apply to bar the defendant from relying upon KND's breach in order to escape its liability under the policy. In support of these claims the plaintiff argues that, not only did the defendant know approximately eighteen months before trial

[5] We decline to address the plaintiff's claim of laches for he has failed to brief the issue. See *State* v. *Milner,* 206 Conn. 512, 542, 539 A.2d 80 (1988); *State* v. *Hernandez,* 204 Conn. 377, 382, 528 A.2d 794 (1987).

that KND had neither the intention nor the financial capability to appear and defend the case, the defendant also participated in and acquiesced in the joint decision not to appear at trial.[6] The plaintiff attempts to rely on the record, without citing specific transcript references, to argue that it is clear that KND cooperated fully with the defendant and that both relied upon the advice of KND's attorney in making the business decision not to defend the action at trial. We disagree.

At the outset, we note that absent estoppel, waiver or other excuse, the substantial or material breach of the cooperation provisions of the insurance policy by an insured puts an end to the insurer's obligation.[7] *O'Leary* v. *Lumbermen's Mutual Casualty Co.*, supra, 38; *Arton* v. *Liberty Mutual Ins. Co.*, supra, 133. Waiver has been defined as the " 'intentional relinquishment or abandonment of a known right or privilege.' " *D'Amico* v. *Manson*, 193 Conn. 144, 147, 476 A.2d 543 (1984); *A & B Auto Salvage, Inc.* v. *Zoning*

_____

[6] The plaintiff also asserted these arguments in support of his first claim that KND did not materially breach the insurance contract. To avoid duplication, we address these claims together.

[7] We need not reach the issue of whether the analysis contained in our recent decision in *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 538 A.2d 219 (1988), would apply here or to all breaches of an insurance contract by an insured. In *Aetna Casualty & Surety Co.*, this court held that an insured's failure to give prompt notice to the insurer of an insurable claim as required by the insurance policy no longer results in an unconditional discharge of an insurer's liability under its insurance contract. Id., 418. Rather, in recognition of the purposes of such notice provisions and the fact that insurance contracts are actually contracts of adhesion, this court held that a disproportionate forfeiture may result and could be avoided where the insured could demonstrate that the delayed notice resulted in no material prejudice to the insurer. Id., 416–20. The case at hand does not involve the breach of such a notice provision for it is undisputed that KND notified Employer's immediately after Brown filed the initial suit. Thus, even assuming the prejudice analysis of *Aetna Casualty & Surety Co.* were to apply here, we would still find for Employer's because the prejudice to it from KND's failure to defend at trial is obvious. Employer's interests were left unprotected at the trial and were thus subject to the present suit under General Statutes § 38-175.

*Board of Appeals,* 189 Conn. 573, 579, 456 A.2d 1187 (1983); see also *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 562, 316 A.2d 394 (1972). While the defendant had the right under the policy to elect to participate in the defense of the action at trial, the record is totally devoid of any evidence that would indicate that the defendant knowingly and intentionally relinquished such right.

Contrary to the plaintiff's unsupported allegation, there is not a scintilla of evidence in the record to indicate that the defendant ever received notice that the matter was going to trial in September, 1983, let alone that the defendant knew or should reasonably have known of KND's intention not to appear at trial. While KND's attorney notified Gail Ann Mussman at Employer's that KND had gone out of business in a letter dated March 31, 1982, the letter also indicated that the case had been claimed for the jury list and was awaiting trial. The letter would lead one reasonably to believe that KND's attorney was merely waiting for the case to be assigned for trial. Thereafter, the attorney made no indications regarding his or KND's intention not to appear at trial when the case was assigned. In fact, KND's attorney testified at trial that he did not recall ever giving notice to the defendant of the start of the trial and that there was nothing in his file to indicate that he did. He also testified that, after KND's dissolution in November, 1981, "[t]here really wasn't too much happening on the case" and that he was not sure whether he communicated with the defendant regarding the case after his letter of March 31, 1982, until July, 1984. Nor is there any evidence to indicate that he notified the defendant of the entry of the default in September, 1983. The record reflects that the first notice to the defendant of KND's default for failing to appear at trial and at the hearing in damages and the entry of the $95,000 judgment was a phone conversation KND's attorney had with Jett Anderson of

Employer's on July 9, 1984, which is evidenced by a letter dated July 11, 1984, that he sent to Anderson. Accordingly, we cannot find that the trial court erred in holding that the defendant did not waive its contractual rights to appear and defend the action at trial.

The plaintiff also argues that the defendant should be estopped from asserting KND's breach of the insurance policy because the defendant shared in and agreed with KND's decision not to appear. The plaintiff, however, has pointed to no evidence in the record from which an inference can be drawn that the defendant even knew of KND's decision, let alone participated in it. "[E]stoppel always requires 'proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . .' *Zoning Commission* v. *Lescynski*, [188 Conn. 724, 731, 453 A.2d 1144 (1982)]." *West Hartford* v. *Rechel,* 190 Conn. 114, 121, 459 A.2d 515 (1983); see also *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 85, 480 A.2d 499 (1984). It is clear that KND's decision was a business decision based upon the advice of its own attorney[8] that KND was judgment proof because of its dissolution. There is no evidence in the record to justify the plaintiff's claim that KND's business decision was influenced by anything the defendant may have said or done.

There is no error.

In this opinion the other justices concurred.

---

[8] The plaintiff attempts to argue that KND's attorney also may have represented Employer's at some point in this litigation. There is nothing to support that claim, however, because the record indicates that the attorney entered an appearance only for KND and was not representing Employer's in the initial action. Whether KND's attorney had other dealings with the defendant on other unrelated matters is of no moment here.