Janet **FLEMING** and Janet Fleming Administratrix of the Estate of Thomas C. Fleming, Plaintiffs,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY,** Defendant.

**Civil No. 3:14cv00403(AWT).**

United States District Court, D. Connecticut.

Signed Feb. 17, 2015.

Jeffrey M. Cooper, Cooper Sevillano, LLC, Bridgeport, CT, for Plaintiffs.

Anthony D. Sutton, Brock Thomas Dubin, Donahue, Durham & Noonan, P.C., Guilford, CT, for Defendant.

### *RULING ON MOTION TO DISMISS*

ALVIN W. THOMPSON, District Judge.

The plaintiffs, Janet McCall Fleming, individually, and Janet McCall Fleming as Administratrix of the estate of her late husband Thomas C. Fleming, bring this action against the defendant, Government Employees Insurance Company ("GEICO"), pursuant to Connecticut General Statutes § 38a–321 (the "Direct Action Statute") as judgment creditors subrogated to the rights of Gregory Dionisio, the defendant in a wrongful death lawsuit brought by the plaintiffs, for: (a) negligent failure to settle the wrongful death lawsuit within the limits of the policies under which GEICO insured Gregory Dionisio; and (b) breach of the covenant of good faith and fair dealing by failing to settle with the plaintiffs. The defendant has moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may be granted.

For the reasons set forth below, the motion is being granted in part and denied in part.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

The Complaint, "which [the court] must accept as true for purposes of testing its sufficiency," alleges the following circumstances. *Monsky v. Moraghan,* 127 F.3d 243, 244 (2d Cir.1997).

The plaintiffs' claims arise out of a wrongful death lawsuit (the "Underlying Action") based on a fatal drunk driving accident that occurred on July 5, 2009 in Wilton, Connecticut. The accident occurred when Gregory Dionisio, while driving John Dionisio's car under the influence of alcohol and/or drugs, crossed into oncoming traffic and struck Thomas Fleming's motorcycle.

At the time of the accident, Gregory Dionisio qualified as an insured under four policies that GEICO issued to Gregory Dionisio, John Dionisio (Gregory Dionisio's father), or Maryann Beverly Dionisio (Gregory Dionisio's mother): Policy Nos. P. 6103427, 1140–06–05–08, 4079–17–12–54, and "unknown". Under the terms of these policies, GEICO agreed that, among other things, it would pay on behalf of any qualified insured under the policy all sums which said qualified insured became legally obligated to pay as damages because of bodily injury or property damage, caused by an accident and resulting from the ownership, maintenance or use of an owned or non-owned vehicle. The total amount of coverage afforded to Gregory Dionisio as a qualified insured under these policies was $1,570,000.

In October 2009, the plaintiffs commenced the Underlying Action against Gregory Dionisio and John Dionisio. During jury selection, the plaintiffs and John Dionisio reached an agreement whereby John Dionisio would pay the plaintiffs $1,300,000 in consideration of a release "running to John Dionisio *in full*, and to GEICO, *limited to* Policy Nos. P 610 3427 and 1140–06–0508." (Complaint ¶ 45.) Anthony Mergler, Claims Supervisor and agent and/or employee of GEICO, sent Plaintiff's counsel a letter that "summarily denied," with "no explanation whatsoever," "any coverage for Gregory Dionisio" under Policy 4079–17–12–54 for the July 5, 2009

accident, without evaluating the claim "objectively and impartially." (Complaint ¶¶ 40, 41, 79(d).) The understanding between the plaintiffs and John Dionisio was that GEICO would indemnify John Dionisio to the full extent of the two policies covered by the agreement. Neither GEICO nor John Dionisio requested a release running to Gregory Dionisio in consideration for the $1,300,000 indemnity payments under the two policies covered by the agreement. Gregory Dionisio then moved for summary judgment, arguing that the settlement agreement operated as a release and discharge of certain negligence claims against him. The motion for summary judgment was denied.

In March 2013, jury selection commenced in the Underlying Action as to the remaining defendants. During jury selection, counsel for the plaintiffs made several demands for payment of the $270,000 remaining in coverage under the two policies that were not the subject of the settlement agreement, Policy Nos. 4079–17–12–54 and "unknown". On April 1, 2013, Attorney James J. Noonan, counsel for GEICO, Maryann Dionisio, "and/or" Gregory Dionisio, offered $250,000 "to settle the claim subject to an agreement on Release language and an agreement to release Greg, Maryann and GEICO." (Complaint ¶ 57.) On April 4, 2013, Attorney Noonan notified the plaintiffs that the offer would be withdrawn if not accepted by 4:00 p.m. on April 5, 2013. On April 11, 2013, the jury returned a verdict in favor of the plaintiffs, and on October 11, 2013, the court entered judgment in the amount of $1,550,086.87. Neither GEICO nor Gregory Dionisio has paid any amount of money towards satisfying the judgment.

## II. *LEGAL STANDARD*

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as

true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*citing Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999) (*quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727

F.Supp. 784, 786 (D.Conn.1990) (*citing Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

### A. First Count: Negligent Failure to Settle

■ The plaintiffs brought the First Count, as judgment creditors subrogated to the rights of Gregory Dionisio pursuant to the Direct Action Statute, for negligent failure to settle the Underlying Action within the limits of the policies under which the defendant insured Gregory Dionisio.

The defendant moves to dismiss the First Count for failure to state a claim. The plaintiffs argue that they have satisfied the pleading requirements for bringing a claim under the Direct Action Statute.

The Direct Action Statute provides a direct cause of action for injured parties to sue the responsible party's insurer.

> Upon the recovery of a final judgment against any person ... by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same

extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

Conn. Gen.Stat. § 38a–321. The Connecticut Supreme Court has set forth three requirements that must be satisfied to bring a cause of action pursuant to this statute: "(1) that the plaintiff has recovered a final judgment; (2) that the judgment is against a person who was insured by the defendant against liability on it; and (3) that the judgment remains unsatisfied." *Skut v. Hartford Accident & Indemnity Co.*, 142 Conn. 388, 393, 114 A.2d 681 (1955).

Here, the plaintiffs have satisfied each of the requirements under of the Direct Action Statute by alleging that they have recovered a final judgment against Gregory Dionisio in the Underlying Action, Gregory Dionisio was insured by the defendant under the policies at issue, and neither Gregory Dionisio nor the defendant have paid any amount of money in satisfaction of the judgment.

 The defendant contends that the First Count should be dismissed nonetheless because the action that the plaintiffs are bringing by way of the Direct Action Statute is a tort claim that is barred by the economic loss doctrine, "a judicially created principle [that] prohibits recovery in tort where the relationship between the parties is contractual in nature and the only losses alleged are purely economic." *Akl v. Trumbull Ins. Co.*, No. MMXCV136010186, 2014 WL 1345257, at *3 (Conn.Super.Ct. Mar. 13, 2014). The defendant argues that "[s]imply because the Direct Action Statute permits the Plaintiffs to step into the shoes of Gregory Dionisio, it does not follow that they can assert whatever cause of action against GEICO they wish. Indeed, Plaintiffs do not and cannot claim that they have any

rights as against GEICO that Gregory Dionisio would not himself have simply by virtue of their statutory subrogation." (Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 30) ("Reply") at 7.) The court agrees.

Although the plaintiffs have satisfied the requirements of the Direct Action Statute such that they can step into the shoes of Gregory Dionisio, they must also state a claim with respect to the underlying tort they contend was committed by GEICO against Gregory Dionisio. *See Brown v. Employer's Reinsurance Corp.*, 206 Conn. 668, 673, 539 A.2d 138 (1988) ("A party subrogated to the rights of an assured under § 38–175 obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy. Consequently, in order for one to proceed under § 38–175, the insured must have had a viable statutory or contractual claim against the insurer....") Thus, the plaintiffs must state a claim for negligent failure to settle, and if they fail to do so the defendant is entitled to dismissal of this count pursuant to Fed.R.Civ.P. 12(b)(6).

 The plaintiffs argue that the motion to dismiss should be denied because, under Connecticut law, the economic loss doctrine does not bar negligent failure to settle actions. Although Connecticut appellate courts have not directly addressed the application of the economic loss doctrine to negligent failure to settle claims, the Connecticut Supreme Court has analyzed the application of the economic loss doctrine in other contexts. In *Williams Ford, Inc. v. Hartford Courant Co.*, the court held that the economic loss doctrine did not bar a negligent misrepresentation claim where it was "independent" of a remedy on the contract, explaining that the plaintiffs

"were not barred from pursuing a negligence claim solely because they also might have had a breach of contract claim." 232 Conn. 559, 579, 657 A.2d 212 (1995). Subsequently, the court held in *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, that the economic loss doctrine barred a negligent misrepresentation claim that was brought with a claim for "commercial losses arising out of the defective performance of a contract for the sale of goods" pursuant to article 2 of the Uniform Commercial Code. 244 Conn. 126, 153, 709 A.2d 1075 (1998). Most recently, in *Ulbrich v. Groth*, the court extended the application of the economic loss doctrine beyond article 2 of the UCC, holding that that the economic loss doctrine barred common law negligence and negligent misrepresentation claims that were brought with a breach of the warranty of title claim arising out of an article 9 secured party sale. 310 Conn. 375, 78 A.3d 76 (2013). The court explained the differing outcomes in *Williams Ford, Inc.* and *Flagg Energy Development Corp.*:

> To the extent, however, that [the plaintiffs] claim that the distinction between *Flagg Energy Development Corp.* and *Williams Ford, Inc.*, is that the former case applies to tort claims that arise out of and are dependent on the contractual relationship between the parties; while the latter case applies to tort claims that are "independent" of the plaintiff's contract claim, and that can survive even if the contract claim fails, we agree.

*Ulbrich v. Groth*, 310 Conn. 375, 404, 78 A.3d 76 (2013) (internal citations omitted). The court articulated the following general rule for applying the economic loss doctrine: "the economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss." *Id.* at 410, 78 A.3d 76. Here, as in *Ulbrich* and *Flagg Energy Development Corp.*, if no contractual duty were found, the tort claim could not survive. *Id.* at 404, 405, 78 A.3d 76 ("[i]n the present case, as in *Flagg Energy Development Corp.*, the defendants' duty to the plaintiffs arose exclusively out of the contractual relationship. If no contractual duty were found, the tort claims could not survive.").

Following *Ulbrich*, the Connecticut Superior Court considered the application of the economic loss doctrine to a negligent failure to settle claim against an insurance company, and concluded that "[t]he economic loss doctrine bar[red] the negligence claim arising out of this breach of contract case." *Akl v. Trumbull Ins. Co.*, No. MMXCV136010186, 2014 WL 1345257, at *4 (Conn.Super.Ct. Mar. 13, 2014).

█ Here, the plaintiffs have alleged that the defendant failed, "[p]ursuant to the terms of [the insurance contracts under which the defendant insured Gregory Dionisio] . . . to act in good faith toward Gregory Dionisio, and to exercise reasonable care and diligence in protecting his interests, particularly his interests in being protected against a judgment for more than the limits of [the insurance contracts at issue]." (Complaint ¶ 75.) Thus, the plaintiffs have alleged a claim for negligent failure to settle that arises out of, and is dependent on, the contractual relationship between Gregory Dionisio and the defendant. *See Ulbrich*, 310 Conn. at 404, 78 A.3d 76. Thus, the economic loss doctrine bars the plaintiffs' negligent failure to settle claim.[1]

---

1. The plaintiffs also contend that the motion to dismiss should be denied because the economic loss doctrine is a "substantive defense" that "is not properly before this [c]ourt at this time because that would be a direct attack or defense upon the merits of the [p]laintiffs' case." (Plaintiffs' Memorandum of Law in Opposition to Geico's Motion to Dismiss (Doc.

## B. Second Count: Breach of the Covenant of Good Faith and Fair Dealing

 The plaintiffs brought the Second Count, as judgment creditors subrogated to the rights of Gregory Dionisio pursuant to the Direct Action Statute, for breach of the covenant of good faith and fair dealing. The defendant contends that the Second Count should be dismissed because the plaintiffs have failed to allege that the defendant acted in bad faith.

[The] duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.... [E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.... Bad faith means more than mere negligence; it involves a dishonest purpose.

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004) (internal citations and quotation marks omitted). In the insurance context, bad faith "arises only when an insurer acts without a reasonable basis." *Windmill Distrib. Co., L.P. v. Hartford Fire Ins. Co.*, 742 F.Supp.2d 247, 263 (D.Conn.2010) *aff'd*, 449 Fed.Appx. 81 (2d Cir.2012) (citations and quotation marks omitted).

[I]n determining whether to accept or reject an offer of compromise, the insurer not only may consider its own interests but also must equally respect the insured's interests. If it fails to exercise good faith or due care in its consideration of an offer of settlement, the insurer may be held liable under causes of action which sound in tort or contract, or both.

*Id.*

 Here, the plaintiffs allege that counsel for the plaintiffs made several demands for the $270,000 remaining in coverage under the two policies that were not the subject of the settlement agreement in the Underlying Action, Policy Nos. 4079–17–12–54 and "unknown". They also allege that counsel for GEICO, Maryann Dionisio "and/or" Gregory Dionisio offered $250,000 to settle the claims provided they received a release for Gregory Dionisio, Maryann Dionisio and GEICO, but took the position that the offer expired at 4:00 p.m. on April 5, 2013. Then, in paragraph 81 of the complaint, the plaintiffs further allege that GEICO breached its duty of good-faith and fair dealing to Gregory Dionisio under the four policies at issue in that:

(a) it had no reasonable basis not to accept an offer to settle all of the Plaintiffs' claims within the limits provided for under [the four policies at issue] when it had multiple opportunities to do

No. 23) ("Plaintiff's Opposition") at 13.) This argument is unavailing. At the motion to dismiss stage, the court will consider whether the plaintiffs' well-pleaded factual allegations, assumed to be true, give rise to an entitlement to relief. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). This necessarily requires the court to engage in an inquiry into the law that governs the claims in the Complaint.

so prior to April 2, 2013, and when it had already determined by its own investigation that liability of its insured was clear and fair compensation for the Plaintiffs' wrongful death could reasonably exceed the limits of coverage;

(b) it intentionally disregarded Greg Dionisio's interests when in did not accept any of the Plaintiffs' offers to settle within the limits provided for under [the four policies at issue], because it was prompted by its own pecuniary interest;

(c) it intentionally exposed Greg Dionisio to liability when it paid $1.3 million dollars under Policy Nos. P. 6103427 and 1140–06–05–08 for a release running to John Dionisio only; and

(d) it failed to ever offer the Plaintiffs the full amount of coverage afforded under [the four policies at issue] in exchange for a full and final release running to Greg Dionisio.

(Complaint ¶ 81.)

Thus, drawing all reasonable inferences in favor of the plaintiffs, the plaintiffs allege that Gregory Dionisio was covered under all four policies at issue, GEICO summarily denied Gregory Dionisio coverage under Policy No. 4079–17–12–54 with no explanation whatsoever and without objectively and impartially evaluating the claim. Having already determined based on its own investigation that the liability of its insured was clear and that fair compensation for the plaintiffs' wrongful death claim could reasonably exceed the limits of coverage, GEICO refused to raise its offer by $20,000, from $250,000 to the full policy limits of $270,000, for the purposes of reaching a settlement of the claim under which there would have been a full release of not only GEICO but also Gregory Dionisio and Maryann Dionisio. These factual allegations, if proven, could support a finding that GEICO acted without a reasonable basis.

GEICO argues that bad faith claims similar to the instant claim have been dismissed in numerous Connecticut Superior Court decisions. However, the cases relied on by GEICO are inapposite. The factual allegations here go beyond what was alleged in each of those cases. In *McCullough v. Encompass Indem. Co.*, the plaintiff's allegations were "simply claims that the defendant did not properly handle the plaintiff's claim for benefits under the policy." No. CV095011546S, 2009 WL 5342506, at *4 (Conn.Super.Ct. Dec. 10, 2009). In *Liquore v. Assurance Co. of Am.*, the plaintiff had made "no claims that the defendant acted in bad faith or with an improper or dishonest motive in failing to pay the plaintiff's claim." No. X04CV010124151S, 2002 WL 521334, at *2 (Conn.Super.Ct. Mar. 19, 2002). Significant in *New England Fertility Inst. v. CNA Commercial Ins. Co.* was that the plaintiff had merely alleged that the defendants refused to reimburse or procure reimbursement for the plaintiff's losses, without "any factual allegations that would establish defendants' lack of good faith." No. X08CV000181244, 2003 WL 21494304, at *2–3 (Conn.Super.Ct. June 10, 2003). Similarly, the plaintiff in *McCrea v. Louis Dreyfus Corp.* merely alleged that the defendant's "fail[ure] to perform certain obligations pursuant to contract" was "willful[ ]". No. 31 63 58, 1994 WL 551200, at *3 (Conn.Super.Ct. Sept. 28, 1994).

## IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Doc. No. [15] ) is hereby GRANTED as to the First Count and DENIED as to the Second Count.

It is so ordered.