**Robert COX, Plaintiff,**

v.

**PEERLESS INSURANCE CO., Defendant.**

**Civ. No. N–89–320 (WWE).**

United States District Court, D. Connecticut.

Aug. 21, 1991.

David Rosen, New Haven, Conn., for plaintiff.

Joseph P. Kenny and William J. Melley, III, Kenny & Brimmer, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

EGINTON, District Judge.

Plaintiff brings this diversity action seeking payment on an insurance contract, pursuant to Connecticut General Statutes § 38–175. Plaintiff alleges that defendant is contractually liable for the payment of prejudgment interest, post-judgment interest, and court costs, all arising out of a personal injury action in which a judgment was entered in 1988. Plaintiff has made an offer of judgment in the instant action, and therefore seeks prejudgment interest in this case as well. The parties have submitted individual trial memoranda and a joint stipulation of facts, and have requested that the court consider this motion as a bench trial with stipulated evidence. There are no material facts in dispute, and the particular language of the insurance contract at issue in this action is clear and unambiguous. The court therefore issues its judgment.

## FACTS

In this court, plaintiff brought an action against defendant's insured, Andrew Savo (*Cox v. Vitale, et al*, Civ.No. N–85–00090 WWE) alleging personal injuries resulting from a motor vehicle accident. The defense of *Cox v. Vitale, et al.*, was controlled and directed by defendant, Peerless Insurance. Plaintiff made an offer of judgment, filed with the court in November, 1986, which was rejected by the defendant. In February, 1988, plaintiff obtained a jury verdict in the amount of $150,000 against defendant Savo. Subsequently, in May, 1988, this court denied defendant Savo's motions to set aside the verdict, to enter a judgment n.o.v., and for a new trial.

In its denial this court stated that the plaintiff was "entitled to prejudgment interest in the amount of $22,191.78 which is twelve percent (12%) of the amount of the jury verdict from the date the offer of judgment was filed [November 17, 1986] to the date of the judgment [February 9, 1988]." citing, Conn.Gen.Stat. § 52–192a; *Gionfriddo v. Avis Rent A Car System, Inc.*, 192 Conn. 301, 472 A.2d 316 (1984). Pursuant to 28 U.S.C. § 1961, plaintiff is entitled to post-judgment interest calculated at 7.14% per annum, from the time of entry of the judgment to the present. Additionally, this court taxed $522.75 in costs in favor of the plaintiff, and against defendant Savo.

Defendant Savo entered into a policy of insurance with the defendant in September, 1984. The insurance policy limits coverage to $50,000 per person. In May, 1988, the defendant tendered a payment of $50,000 in partial satisfaction of the judgment against its insured, defendant Savo. Neither the defendant nor Savo have made any further payments to the plaintiff.

The parties have stipulated to the following post-judgment amounts due and owing by defendant Savo to the plaintiff: $3,558 for the period February 10, 1988 to May 25, 1988, and an additional $19,660 for the period May 25, 1988 to September 1, 1990.

*The Insurance Policy*

The relevant insurance policy is a form prepared for the defendant by Insurance Services Office, Inc. (hereinafter "ISO"), a private company engaged in the business of providing insurance policy forms to insurance companies. The policy, under which defendant Savo was insured starting in August, 1984, contains the following language, in the section entitled Part A— Liability Coverage:

> We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when

our limit of liability for this coverage has been exhausted.

In 1985, ISO changed its policy form to include the following language:

We will pay damages for "bodily injury" or "property damage" for which any "insured" become legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

Defendant Savo's policy, and the 1985 policy contain a provision in which the insurer agrees to pay certain "supplementary payments [i]n addition to our limit of liability ..." In both policies these payments include:

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage ...

5. Other reasonable expenses incurred at our request.

In 1988, ISO released an explanatory bulletin describing and summarizing its personal auto insurance policies, and in particular, explaining the changes made to defendant Savo's subsequent insurance policy. The bulletin, dated April, 1988, includes the following language:

Part A of the personal auto policy expresses the insurance company's promise to "pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." Further, the company agrees to "settle or defend ... any claim or suit asking for these damages," and to pay all costs incurred in defending a suit—in addition to the applicable limit of liability.

The promises to pay damages and to defend any claim or suit asking for those damages are separate and independent promises. The insurer has a duty to indemnify and a duty to defend the insured. That is why defense costs are considered to be in addition to the limit of liability. For example, if the policy has a limit of liability of $300,000, this full amount is available for indemnification; an attorney's fee of $10,000 plus costs of $2,000 will not reduce the limit of liability by the $12,000. However, the insurer's duty to settle or defend does end when the limit of liability has been exhausted.

Furthermore, the insuring agreement has been modified to include as covered damages, i.e. paid within policy limits, any prejudgment interest awarded against the insured. This added coverage, which parallels similar changes in commercial liability policies, has resulted from the enactment in several states of laws that allow claimants to collect interest on judgments between the time the suit was entered and judgment was rendered. Because the policy language states that such amounts are included as damages, they are subject to PAP limits that apply to all damages. In contrast, interest that accrues after a judgment is entered and up to the time that judgment is paid remains a supplementary payment, payable in addition to the limit of liability.

## DISCUSSION

Section 38–175 of the Connecticut General Statutes, popularly known as the Direct Action Statute, "protects those injured by judgment proof insureds, by subrogating the injured party or judgment creditor to the rights of the assured against the insurer." *Brown v. Employer's Reinsurance Corp.*, 206 Conn. 668, 672, 539 A.2d 138 (1988). "A party subrogated to the rights of an assured under § 38–175 obtains no different or greater rights against the insurer than the insured possesses." "Consequently, in order for one to proceed under § 38–175, the insured must have had a

viable statutory or contractual claim against the insurer." *Brown* at 673, 539 A.2d 138.

■ While "no insurer is bound to provide indemnification or defense beyond the scope of the coverage described in the insurance contract, the policy", to determine the scope of coverage, the court may be required to interpret and provide a reasonable definition to language contained in the policy. *Plasticrete Corp. v. American Policyholders Ins. Co.*, 184 Conn. 231, 235–236, 439 A.2d 968 (1981). However, insurance policies must be construed as a whole, and the intent of the parties in entering into the contract for insurance is to be derived from the four corners of the policy. *Jurrius v. Maccabees Mutual Life Ins. Co.*, 587 F.Supp. 1301, 1304 (D.Conn.1984). In the instant action, the language of the insurance policy is clear and unambiguous, leaving for the court's determination, as a matter of law, whether the plaintiff's claims for judgment interest and court costs are contained within the plain meaning of the policy's language.

## I. COURT COSTS

■ Plaintiff claims $522.75 in court costs. While the insurance policy does not specifically mention payment of court costs, it is inherent in the defendant's 1984 policy language which provides: "In addition to our limit of liability, we will pay all defense costs we incur." Costs imposed by the court clearly fall within this definition, and are therefore payable by the defendant.

The April, 1988, ISO bulletin further supports the inclusion of court costs within the defendant's "defense costs" policy language. The ISO bulletin contains the following language, whereby the defendant acknowledges its duty to pay costs associated with a case's defense: "if the policy has a limit of liability of $300,000, this full amount is available for indemnification ... costs of $2,000 will not reduce the limit of liability...."

Accordingly, the defendant is liable for the payment of $522.75 in court costs, plus an interest payment calculated at 7.14% per annum on the principal from June 7, 1988.

## II. PREJUDGMENT INTEREST

■ Plaintiff claims $22,191.78 in prejudgment interest. Although the 1984 insurance policy is silent as to prejudgment interest, it is properly included within the definition of "defense costs". Prejudgment interest is a statutory right, primed by a plaintiff's filing of an Offer of Judgment with the court, and activated after the plaintiff receives a verdict, and a judgment award of an amount equal to or greater than his original settlement offer. Conn.Gen.Stat. § 52–192a. The purpose of this statute is to encourage settlement. In addition to the costs associated with conducting a trial, the statute's prejudgment interest award "provides an additional incentive to settle a lawsuit and avoid a trial in certain cases by imposing an increased penalty upon a nonsettling litigant." *Murphy v. Marmon Group, Inc.*, 562 F.Supp. 856, 859 (D.Conn.1983).

An award of prejudgment interest arises from a defense attorney's strategic decision to reject an offer of settlement, and proceed to trial. Therefore, an award of prejudgment interest does not arise out of the action's underlying controversy, and is not taxed to the defendant's policy's $50,-000 limit of liability as "damages", but rather is an expense associated with the "defense costs" and strategy of the case. In the instant action, the defense of the case was controlled and directed by the defendant, as was the decision to reject the plaintiff's offer of judgment. The 1984 policy, under which defendant Savo's was insured, states: "We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur." To allow the insurer total control over all pre-trial settlement negotiations, and ultimately tax the insured for the insurer's decision not to settle within the insured's liability limit would discourage settlement, and would be in opposition to the statutory goal of prejudgment interest awards. Accordingly, the defendant is liable for $22,191.78 in

prejudgment interest, plus an interest payment calculated at 7.14% per annum on the principal from February 10, 1988.

## III. POST–JUDGMENT INTEREST

■ Plaintiff claims post-judgment interest, alleging that the defendant's May 25, 1988 payment of $50,000 failed to satisfy the judgment, prejudgment award, and costs, leaving an unpaid balance of $26,272.53. Defendant Savo's insurance policy is instructive on the issue of post-judgment interest: "Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage...." The limit of liability on defendant Savo's policy was $50,000. Therefore, when this amount was timely paid, the defendant had satisfied his contractual obligations under the insurance policy, and could not be assessed post-judgment interest on the principal judgment award.

The plaintiff, employing higher math, alleges that the defendant's May 25, 1988 payment was made in partial satisfaction of the amounts due on both the principal of the judgment ("damages"), and accrued interest ("costs"). The defendant maintains that its one time payment of $50,000 satisfied its limit of liability under the insurance policy as to the "damages", in partial satisfaction of the $150,000 judgment. The court agrees with the less algebraic formula of the defendant.

Accordingly, post-judgment interest on the $50,000 "damages" judgment will not be awarded. However, as articulated in Sections I and II above, post-judgment interest is awarded for "costs".

## IV. PREJUDGMENT INTEREST IN THIS ACTION

■ An award of prejudgment interest is typically provided in jury and court trials. The form of this instant procedure (with trial memoranda and a stipulation of facts submitted by the parties), and the dispositive nature of this ruling satisfy the requirements necessary for consideration of an award of prejudgment interest. *See Murphy v. Marmon Group, Inc.*, 562 F.Supp. 856, 859–60 (D.Conn.1983).

## CONCLUSION

For the reasons stated above, judgment shall enter for the plaintiff for $522.75 in court costs, plus an interest payment calculated at 7.14% per annum on the principal from June 7, 1988, and for $22,191.78 in prejudgment interest, plus an interest payment calculated at 7.14% per annum on the principal from February 10, 1988. Additionally, the plaintiff is ordered to submit to the court, within thirty days of the filing of this ruling, evidence to support the award of prejudgment interest in this action.

SO ORDERED.