Melinda Ryan ARMACOST, Plaintiff,

v.

AMICA MUTUAL INSURANCE
COMPANY, Defendant.

Civ. A. No. 91–0447 P.

United States District Court,
D. Rhode Island.

May 14, 1993.

Mark S. Mandell, Mandell, Goodman, De-Luca & Schwartz, Providence, RI, for plaintiff.

David P. Whitman, Hanson, Curran, Parks & Whitman, Providence, RI, for defendant.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

In this diversity action, plaintiff Melinda Ryan Armacost ("Armacost"), a resident of Massachusetts, sued for damages arising from a motor vehicle accident in Newport, Rhode Island. On September 23, 1988, Armacost was struck by an automobile owned and driven by Stephen B. Owen ("Owen"), a resident of New York, and insured by Defendant Amica Mutual Insurance Company ("Amica"), a Rhode Island company based in Providence, RI.

The original Complaint was filed against Owen, the insured, on September 12, 1991. On March 5, 1992, however, Magistrate Judge Boudewyns granted plaintiff's unopposed motion for leave to amend the Complaint in order to substitute Amica, Owen's insurer, as the defendant in the action. Such "direct actions" are authorized by statute in Rhode Island when an injured party, after good-faith efforts, is unable to serve process upon the insured party. See R.I.G.L. §§ 27–7–1; 27–7–2; see also Collier v. Travelers' Ins. Co., 97 R.I. 315, 197 A.2d 493 (1964).[1] On January 21, 1993, a jury

---

1. I must note that the Rhode Island Supreme Court and the First Circuit have construed the substantially similar predecessor version of these statutes as inapplicable to policies written outside of Rhode Island for a foreign insured. See Coderre v. Travelers' Ins. Co., 48 R.I. 152, 136 A. 305 (1927); Riding v. Travelers' Ins. Co., 48 R.I. 433, 138 A. 186 (1927); Martin v. Zurich General Accident & Liability Ins. Co., 84 F.2d 6 (1st Cir.), cert. denied, 299 U.S. 579, 57 S.Ct. 43, 81 L.Ed. 427 (1936). While the record is unclear, the direct action in this case appears to be based upon a policy issued to a New York resident in New York, explicitly incorporating New York law. Although Amica is a Rhode Island insurance company, it is debatable whether the Rhode

returned a verdict in the amount of $750,000 against defendant Amica, and the clerk of the Court entered judgment in accordance with the jury verdict on January 22, 1993.[2]

Presently before the Court are the parties' cross-motions to amend the judgment. Defendant Amica requests entry of judgment in the amount of $495,000—the remaining amount of coverage under the insurance policy.[3] Plaintiff does not dispute that Amica's *contractual* liability under Rhode Island law is limited to the remaining coverage under its policy. She argues, however, that the judgment should be amended to include Amica's *statutory* obligation under R.I.G.L. § 27–7–2.2 to pay interest above and beyond that contractual liability, based on Amica's rejection of plaintiff's pretrial settlement offer.

For the reasons stated below, I hold that the judgment must be reduced to reflect the remaining contractual liability under the insurance policy—$495,000. I also find, however, that pursuant to R.I.G.L. § 27–7–2.2, plaintiff is entitled to statutory interest on the judgment.

## I

■ The Rhode Island Supreme Court recently considered whether Rhode Island's direct action provisions could work to enlarge the liability of an insurer beyond the limits stated in the applicable insurance policy. In *Barber v. Canela*, 570 A.2d 670, 671 (R.I. 1990) (citing *Factory Mutual Liability Insurance Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970)), the court stated:

> It is clear that § 27–7–2, which allows a direct action against an insurer when service against the insured cannot be obtained, is designed only to provide a reme-

dy to the injured party and not to enlarge the liability of the insurer beyond the limits stated in the policy.

The court then quoted the "general rule" as stated in 12A *Couch on Insurance* 2d § 45:833, at 486 (Rev. ed. 1981):

> As a general rule, and in the absence of contrary provisions in the statutes or policies, provisions giving the injured person the right to sue the automobile liability insurer do not enlarge the insurer's liability, but merely enable the injured person to succeed to the insured's rights against the insurer. That is, the right of the claimant is merely derivative, being derived from that of the insured, and is therefore dependent upon the existence of liability of the insurer to the insured under the contract of insurance. *Id.*

Plaintiff concedes that, "in the absence of contrary provisions in the statutes or policies," *Barber* controls the issue whether defendant Amica may be held liable for *contractual* damages in excess of the remaining policy coverage—$495,000. I see no reason to belabor the point and, therefore, hold that the jury's damage award of $750,000 must be reduced to $495,000.

## II

■ The real dispute in this case involves the interpretation of Rhode Island's rejected-settlement offer interest statute, R.I.G.L. § 27–7–2.2, which authorizes the award of interest on a judgment, even where the combined judgment and interest exceeds the applicable policy limits. Section 27–7–2.2 provides:

---

Island legislature ever intended the direct action provisions to apply in these circumstances.

Amica has never contested the legitimacy of the cause of action brought by plaintiff here, and has repeatedly indicated its "acquiescence" to suit pursuant to § 27–7–2. Thus, Amica has waived whatever objections it might have raised in a proper motion to dismiss under F.R.Civ.P. 12(b)(6). *See* 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1392, at 763 (1990); *Brown v. Trustees of Boston University*, 891 F.2d 337, 356–57 (1st Cir.1989) (failure to state a claim is ordinarily waived if not raised by the end of trial).

**2.** The judgment entered by the clerk did not include any prejudgment interest. Execution of judgment was stayed by the Court on March 26, 1993, pending resolution of the motions considered here.

**3.** The parties agree that the policy of insurance provided for payment of damages for bodily injury up to a liability limit of $500,000. The parties further agree that Amica paid $5,000 to plaintiff's husband for injuries sustained in the accident, and that the remaining coverage under the policy is $495,000.

**Interest on judgment—Payment by insurer.**—In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues and the offer is rejected by the defendant's insurer then *the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest thereon totals a sum in excess of the policy coverage limitation.* This written offer shall be presumed to have been rejected if the insurer does not respond within a period of thirty (30) days. [emphasis added].

On December 29, 1992, before trial, plaintiff's counsel wrote to Amica's counsel and offered to settle plaintiff's claim for $500,-000—the amount of Amica's coverage limits. Plaintiff's offer to settle expressly referred to R.I.G.L. § 27–7–2.2. Amica did not accept the offer and went forward with the trial. Before and during the trial, Amica made a counter-offer of $175,000 to settle the claim.[4] As noted above, the jury returned a $750,000 verdict in plaintiff's favor.

Plaintiff argues that, having complied with the rejected-settlement offer interest statute, she is entitled to "all interest due on the judgment entered by the court even if the payment of the judgment and interest thereon totals a sum in excess of the policy coverage limitation." R.I.G.L. § 27–7–2.2. In addition, she contends that prejudgment interest should be awarded from the date of the accident, and should be calculated using the full amount of the jury award—$750,000. Defendant disputes the applicability of § 27–7–2.2 to direct actions under R.I.G.L. § 27–7–2. In the alternative, it argues that principles of statutory construction and Rhode Island precedent require that the provision be interpreted to cover only the payment of *post-judgment* interest in excess of policy

limits. These issues present questions of first impression in Rhode Island.

### A

This diversity action is governed by the principles of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. In *Roy v. Star Chopper Co.,* 584 F.2d 1124, 1135–36 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), the First Circuit held that "[a] federal court should properly apply a forum state's pre-judgment interest statute when sitting in a diversity case." While the First Circuit considered the applicability of a general prejudgment interest provision, other federal courts, sitting in diversity, have applied forum state rejected-settlement offer interest statutes similar to the one involved in this case. *See Murphy v. Marmon Group, Inc.,* 562 F.Supp. 856, 858 (D.Conn.1983) (state offer-of-judgment interest statute established "substantive statutory right" and Connecticut law applied, not federal law); *Datapoint Corp. v. M & I Bank,* 665 F.Supp. 722, 729 (W.D.Wis.1987) (court applied state rejected-offer interest statute rather than F.R.Civ.P. 68's offer-of-judgment provisions). These cases, and Amica's insistence that Rhode Island law control the extent of its liability under the cause of action created by R.I.G.L. § 27–7–2, lead me to conclude that R.I.G.L. § 27–7–2.2 should, if applicable by its own terms, be implemented in this case.

### B

Prejudgment interest statutes are generally designed to encourage early settlement of claims and to compensate prevailing injured parties for the delay in payment necessitated by prosecuting the action. *See Martin v. Lumberman's Mut. Cas. Co.,* 559 A.2d 1028, 1031 (R.I.1989); *Di Meo v. Philbin,* 502 A.2d 825, 826 (R.I.1986) (citing *Isserlis v. Director of Public Works,* 300 A.2d 273 (R.I.1973)). Plaintiff argues, and I

---

**4.** Amica's conduct in going forward with the trial and its counter-offers before and during trial clearly constituted a rejection of plaintiff's settlement offer. *See* 1 Corbin on Contracts § 90, at 382 (1967) ("In addition to its effect in creating a power of acceptance, a counter-offer ordinarily terminates the power to accept the previously made offer to which it is a 'counter,' or reply, in the negotiation.").

agree, that Rhode Island's rejected-settlement offer interest statute serves the same compensatory and settlement goals as the state's more general interest statutes. *E.g.,* R.I.G.L. § 9–21–8 (Interest on judgment for money); R.I.G.L. § 9–21–10 (Interest in civil action).

When a plaintiff's claim is serious enough to approach policy limits, an insurer's incentive to settle in order to avoid the effect of a general interest statute evaporates. The insurer can refuse to settle with impunity, because its total exposure is limited by the policy. Section 27–7–2.2 attempts to reinvigorate the normal balance in negotiating power by shifting to the non-settling insurer the risk that a plaintiff's judgment, when combined with interest, will exceed applicable policy limits. In addition, the policy of encouraging settlements would be entirely defeated if an insurance company could stall and delay litigation of a meritorious claim without any risk. In effect, by paying the policy limits immediately upon entry of judgment, the insurer could avoid paying any interest whatsoever. This result would appear to render § 27–7–2.2 entirely superfluous.

There are few cases in this area, and none in Rhode Island. Nevertheless, decisions in other jurisdictions support the above reasoning. For example, in *Knoche v. Wisconsin Mutual Ins. Co.,* 151 Wis.2d 754, 445 N.W.2d 740 (Ct.App.1989), a Court of Appeals in Wisconsin interpreted that state's rejected settlement offer interest statute as authorizing statutory interest in excess of policy limits. The Wisconsin statute provides, in pertinent part:

If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Wis.Stat. § 807.01(4).

The court noted the purpose of the section was "to encourage settlement of cases prior to trial." *Knoche,* 445 N.W.2d at 743 (quoting *DeMars v. LaPour,* 123 Wis.2d 366, 366

N.W.2d 891, 894 (1985)). Responding to the defendant insurance company's argument that, based on its policy terms, it was contractually liable only for interest from the date of the judgment in the case (rather than the statute's provision for interest from the date of the settlement offer), the court stated:

[The insurer's] obligation to pay interest under sec. 807.01(4) is not, however, limited by its contract. Section 807.01 applies to an insurance company which is sued directly under sec. 632.24, Stats. The purpose of sec. 807.01, to encourage settlement of cases prior to trial, would be subverted if the liability insurer could, by contract, free itself from the application of ... [sec.] 807.01(4). *Id.*

Thus, in a direct action against an insurer, the Wisconsin court held that the insurer could not escape liability for interest under the rejected-settlement offer interest statute by relying upon contractual terms.

Taking a slightly different approach, the court in *Cox v. Peerless Ins. Co.,* 774 F.Supp. 83 (D.Conn.1991), interpreted Connecticut's Offer of Judgment Statute, Conn.Gen.Stat. § 52–192a, as authorizing prejudgment interest in excess of applicable policy limits. In *Cox,* a party injured in an automobile accident brought suit directly against the insurer after obtaining a judgment against the insured tortfeasor. The court, interpreting the Offer–of–Judgment statute and the applicable policy, offered the following analysis:

Although the 1984 insurance policy is silent as to prejudgment interest, it is properly included within the [policy's] definition of "defense costs". Prejudgment interest is a statutory right, primed by a plaintiff's filing of an Offer of Judgment with the court, and activated after the plaintiff receives a verdict, and a judgment award of an amount equal to or greater than his original settlement offer. Conn.Gen.Stat. § 52–192a. The purpose of this statute is to encourage settlement. In addition to the costs associated with conducting a trial, the statute's prejudgment interest award "provides an additional incentive to settle a lawsuit and avoid a trial in certain cases by imposing an increased penalty upon a non-

settling litigant." *Murphy v. Marmon Group, Inc.*, 562 F.Supp. 856, 859 (D.Conn. 1983).

\* \* \*

An award of prejudgment interest arises from a defense attorney's strategic decision to reject an offer of settlement, and proceed to trial. Therefore, an award of prejudgment interest does not arise out of the action's underlying controversy, and is not taxed to the defendant's policy's $50,000 limit of liability as "damages", but rather is an expense associated with the "defense costs" and strategy of the case. 774 F.Supp. at 86.

Thus, the court interpreted the rejected offer interest statute as imposing a statutory obligation upon the insurer to pay interest in addition to policy limits as a form of "defense cost" under the policy.

Defendant attempts to distinguish these cases by noting that the statutory provisions involved are worded differently from the Rhode Island version at issue in this case. For example, the Connecticut and Wisconsin statutes provide for interest only from the date of the settlement offer, while the Rhode Island statute appears to allow interest from the date the cause of action accrued. I find, however, that the policies underlying the provisions are the same, though the mechanism for their implementation may differ. More importantly, each measure appears to authorize the award of statutory interest in excess of an insurer's contractual liability, in order to fulfill the relevant legislative goals (settlement/compensation).

## C

Defendant Amica raises several objections to the application of § 27–7–2.2 in this case. First, it argues that the Rhode Island Supreme Court's rulings in *Barber v. Canela, supra,* and *Factory Mutual, supra,* foreclose the award of prejudgment interest in excess of policy limits under any circumstances. In *Factory Mutual,* relied upon heavily by the *Barber* court, the court held that prejudgment interest under R.I.G.L. § 9–21–10, the general prejudgment interest statute, when added to a judgment, was an element of damages rather than an "expense" or "cost"

taxed to the insured under the policy. Thus, an insurer was not obligated to pay, in excess of its policy limits, prejudgment interest added pursuant to that section.

Plaintiff argues, and I agree, that Amica's reliance upon *Barber* and *Factory Mutual* is misplaced. First, *Factory Mutual* involved § 9–21–10, the general prejudgment interest statute, not the specific rejected-settlement offer interest statute at issue here. Second, the plain language of § 27–7–2.2 authorizes the award of statutory interest in excess of policy limits. Finally, § 27–7–2.3, the statutory provision immediately following § 27–7–2.2, requires insurers to keep records of all judgments entered in excess of policy limits pursuant to § 27–7–2.2, and prevents them from using such excess payments in the calculation of subsequent rate adjustments. This provision strongly supports the plaintiff's view in this case.

■ Amica also argues that statutes granting interest on judgments must be strictly construed because such a right was statutorily created in derogation of the common law. *Atlantic Refining Co. v. Director of Public Works,* 104 R.I. 436, 244 A.2d 853, 856 (1968) (construing R.I.G.L. § 9–21–8). Strictly construed, Amica contends, § 27–7–2.2 refers only to "civil action[s] in which the defendant is covered by liability insurance ..." In this case, Amica is the defendant and is obviously not "covered by liability insurance." As noted *supra* part I, however, actions under § 27–7–2 are derivative in nature. They derive from the injured party's right to proceed to judgment against the insured. *See Barber,* 570 A.2d at 671. Thus, in essence this is a civil action "in which the defendant is covered by liability insurance." R.I.G.L. § 27–7–2.2. And it follows that Armacost's offer under § 27–7–2.2 was an offer made to the "defendant's insurer."

■ Next, Amica argues that, if applicable, the statute must be interpreted as applying only to post-judgment interest. In this regard, it counsels the Court to look to Rhode Island's two other general interest provisions: R.I.G.L. §§ 9–21–8 and 9–21–10. Section 9–21–8 is entitled, "Interest on judgment for money." It provides that "[e]very

judgment for money shall draw interest at the rate of twelve percent (12%) per annum to the time of its discharge." It has been treated by the Rhode Island Supreme Court as a post-judgment interest statute. *See, e.g., Paola v. Commercial Union Assur. Cos.,* 490 A.2d 498 (R.I.1985); *Industrial National Bank v. Isele,* 290 A.2d 903 (R.I.1972). By contrast, § 9–21–10, provides:

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein ...

The first sentence of the § 9–21–10 has been routinely treated as a prejudgment interest statute. *See, e.g., Cardi Corp. v. State,* 561 A.2d 384 (R.I.1989); *Andrade v. State,* 448 A.2d 1293 (R.I.1982).

Based on the above statutory language and interpretations, defendant argues that the legislature and courts have clearly distinguished between "interest on damages" as prejudgment interest and "interest on judgment" as post-judgment interest. Thus, § 27–7–2.2's reference to "interest on judgment" must be construed to refer only to post-judgment interest.

▮▮▮ Defendant's textual argument falls within the range of conceivable interpretations of § 27–7–2.2. But it cannot succeed for several reasons. First, as plaintiff notes, defendant's argument ignores § 27–7–2.2's explicit reference to *"all* interest on the judg-

ment." (emphasis added). Second, as distinguished from the general interest provisions of §§ 9–21–8 and 9–21–10, § 27–7–2.2 applies only to situations in which a plaintiff has offered to settle its claim within policy limits. Finally, as noted above, defendant's reading would render the statute virtually ineffective as an incentive to settle meritorious claims reasonably and fairly.[5]

▮▮▮ Finally, relying on *Coderre v. Travelers' Ins. Co.,* 48 R.I. 152, 136 A. 305 (1927) and *Riding v. Travelers' Ins. Co.,* 48 R.I. 433, 138 A. 186 (1927), Amica questions the constitutionality of § 27–7–2.2. It argues that the statute purports to enlarge the liability of an insurer beyond the terms of the contract of insurance, and that it is beyond the constitutional authority of the state to so regulate contracts of insurance entered into outside of the state. First, I note that Amica's "acquiescence" to the cause of action brought here and its insistence that Rhode Island law govern the extent of its liability severely undercut any constitutional objections it might have to the application of § 27–7–2.2 to this case. Second, § 27–7–2.2 does not purport to regulate contracts of insurance in any way. It simply governs the behavior of litigants in Rhode Island courts, in an effort to enhance the prospects of expeditious and reasonable settlement in cases where there is liability insurance.[6]

▮▮▮ Even assuming the statute raised an impairment-of-contracts question, it would still pass muster under modern constitutional analysis. In *In re Advisory Opinion to the Governor (DEPCO),* 593 A.2d 943, 948–49 (R.I.1991) (citing and quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)), the Rhode Island Supreme Court

---

**5.** A statute may not be construed in such a way that would attribute to the legislature an intent that would result in absurdities or would defeat the underlying purpose of the statute. *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). Nor should statutes be construed in such a manner that they achieve meaningless results. *Trembley v. Central Falls,* 480 A.2d 1359, 1363 (R.I.1984).

**6.** I also note that the cases relied upon by Amica, *Coderre* and *Riding,* involved the construction of

the predecessor statute to the direct liability provisions of R.I.G.L. §§ 27–7–1 and 27–7–2. That statute—then in a single section—expressly provided that "[e]very [liability] policy hereafter written * * * *" was required to provide for direct liability to the injured party and, upon return of a *non est inventus* summons, the injured party was entitled to proceed directly against the insurer. By contrast, § 27–7–2.2 contains no language that compels an insurance company to include any provision in its policy regarding the payment of interest.

articulated the modern three-part test for analyzing purported contract-clause violations:

First, has the state law in fact substantially impaired a contractual relationship? Second, if the law constitutes a substantial impairment, can the state show a legitimate public purpose behind the regulation, "such as the remedying of a broad and general social or economic problem"? Third, is the legitimate public purpose sufficient to justify the impairment of the contractual rights?

Section 27–7–2.2 does not substantially impair a contractual relationship. In effectuating its remedial purpose it has a collateral effect on the insurance company's obligation, but its aim and intent is not to impair the contractual relationship. In fact, its aim is to require the insurance company to honor its contractual obligation by offering its policy limits when reasonable. Even assuming § 27–7–2.2 was construed as having a substantial impact on a contractual relationship, the state has a legitimate public purpose behind the regulation, namely, balancing the negotiating process in order to encourage within-policy limits settlements. Finally, § 27–7–2.2 does not itself require the insurance company to pay in excess of its policy limits. It is only when the insurance company receives and turns down a within policy limits offer and a jury returns a verdict which, with prejudgment interest, exceeds the policy limits, that the company must pay more than it contracted to pay.

Thus, in light of Amica's consent to this cause of action, and the important public purposes underlying R.I.G.L. § 27–7–2.2, Amica's constitutional argument cannot prevail.

### III

For the reasons stated above, I must amend the judgment for damages to reflect Amica's remaining contractual liability under the policy—$495,000. In addition, I find that R.I.G.L. § 27–7–2.2 applies to this action and obligates Amica to pay statutory interest on the amended judgment, even though such interest, when added to the amended judgment, requires Amica to pay an amount which exceeds the limits of its liability under the applicable insurance policy. Prejudgment interest shall be calculated in accordance with R.I.G.L. § 9–21–10, at 12% per annum from the date the cause of action accrued. Post-judgment interest shall be calculated in accordance with 28 U.S.C. § 1961. *Loft v. Lapidus*, 936 F.2d 633, 639 (1st Cir.1991) (post-judgment interest is determined by federal law, not state law, even in diversity cases).

The plaintiff shall submit an Amended Judgment in accordance with this Memorandum and Order.

SO ORDERED.