IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 11, 2002 Session

## TERESA MALONE v. SHANE MADDOX, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 01C341      W. Neil Thomas, III, Judge**

**FILED FEBRUARY 25, 2003**

**No. E2002-01403-COA-R3-CV**

---

This case focuses on an insurance company's liability under the uninsured motorist ("UM") provisions of an automobile insurance policy. It arises out of an automobile accident involving Teresa Malone ("the policyholder") and Shane Maddox ("the uninsured motorist"). The policyholder appeals the trial court's judgment decreeing that the policyholder's uninsured motorist carrier, Harleysville Mutual Insurance Company ("the UM carrier"), cannot be held liable for prejudgment interest under the facts of this case because such an award would cause the total judgment against the UM carrier to exceed the UM coverage limit in the policy. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Teresa Malone.

William A. Lockett and Michael A. Kent, Chattanooga, Tennessee, for the appellee, Harleysville Mutual Insurance Company.

### OPINION

I.

The material facts pertaining to the issues on this appeal are not in dispute.[1] On February 18, 2000, at about 11:15 p.m., the policyholder and the uninsured motorist were involved in a two-vehicle accident in Chattanooga. At the time of this nighttime, head-on collision, the uninsured motorist was driving on the wrong side of the road, at an excessive rate of speed, without headlights,

---

[1]The UM carrier agreed in its brief that the policyholder's Statement of the Case and Statement of the Facts in her brief were accurate.

and while under the influence of an intoxicant.   As a result of the accident, the policyholder sustained serious personal injuries.

The policyholder sued the uninsured motorist, seeking to recover compensatory damages for the injuries and damages proximately caused by the uninsured motorist's negligence.  She caused process to be served on the UM carrier.  The UM carrier filed an answer and defended in its own name.  The jury returned a verdict against the uninsured motorist for $200,000.  The trial court entered judgment against the UM carrier for $50,000.

Following the entry of the trial court's judgment on the jury's verdict, the policyholder moved the trial court, pursuant to the provisions of Tenn. Code Ann. § 47-14-123 (2001),[2] for an award of prejudgment interest against the UM carrier "on the $50,000 policy amount from the date of the injury to the date of the payment of the judgment into [c]ourt."  The trial court denied the motion.  In its order denying the requested relief, the trial court opined as follows:

> After careful deliberation, the Court concludes that the language of the automobile liability insurance policy pertaining to the limit of liability for uninsured/underinsured motorist coverage prohibits any award of pre-judgment interest that would exceed the limit of liability applicable to the policy.  However, were it not for the policy language and the limit of liability, the Court would find that it is equitable that Harleysville pay pre-judgment interest for a period of one year prior to the date of the judgment on the amount of its liability of $50,000 in this case at the rate of ten percent (10%) per annum, an amount equal to $5,000.

II.

The policyholder makes several arguments in support of her contention that the trial court erred in refusing to award prejudgment interest.  First, she argues that an award of prejudgment interest on a damage award against a UM carrier is an add-on, separate and distinct from, and in addition to, the basic judgment against the UM carrier based upon the negligence of the uninsured motorist. While conceding, as she must, that the jury's award of $200,000 extrapolates to an award against the UM carrier of $50,000 – the amount of the UM carrier's limit of liability in this case – she argues that the nature of the statutory "creature" known as prejudgment interest is such as to render it not subject to the contractual limitation of $50,000.

---

[2]Tenn. Code Ann. § 47-14-123 provides, in pertinent part, as follows:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; . . .

In support of her first argument, the policyholder relies on the case of ***Goff v. Permanent General Assurance Corp.***, C/A No. 03A01-9405-CV-00185, 1994 WL 585771 (Tenn. Ct. App. E.S., filed October 19, 1994). In ***Goff***, we were presented squarely with the question of whether a judgment against a UM carrier for the *full* amount of its coverage was subject to *postjudgment* interest under Tenn. Code Ann. § 47-14-121 (2001),[3] even though such an award would obviously cause the total amount due from the UM carrier to exceed the stated limit of UM coverage in the policy. ***Id***. at *2. We held that postjudgment interest was mandated by the statute and that *all* judgments were subject to it. ***Id***. We concluded that the UM carrier in that case, *i.e.*, PGAC, was liable for postjudgment interest on top of the "maxed-out" judgment of $25,000:

> Tenn. Code Ann. § 47-14-121, et seq. provides for post-judgment interest, and it is not controverted that the personal injury judgment bears interest at the rate of ten percent. Neither is it controverted that in any event, PGAC would have been liable for interest only on $25,000.00, as contrasted to the entire amount of the judgment. We do not agree with the argument of PGAC that under no circumstances can it be liable for more than $25,000.00, "the maximum limit of liability for all damages." *The statutes regulating interest, bad faith, and the like, impose liabilities in addition to the limits of coverage*.

***Goff***, 1994 WL 585771, at *2 (citations omitted) (emphasis added).

For her second argument, the policyholder contends that her policy of automobile insurance does not include prejudgment interest within the concept of damages that is subject to the cap of $50,000. Thus, so the argument goes, prejudgment interest, not being an element of the damages so limited, is just like postjudgment interest and can be added to a judgment against the UM carrier even though the pre-existing damages award is already at the maximum limit of UM coverage.

The policyholder also argues that the trial court's conclusion regarding prejudgment interest is at odds with the public policy embodied in the prejudgment interest statute. She contends that the trial court's denial of prejudgment interest in the instant case "is erroneous because it ignores the explicit purpose of prejudgment interest awards, disregards the insurance company's obligation to pay compensatory damages at the time when it is equitable to pay them, and creates an incentive for insurance companies to delay paying claims even after the total amount of the obligation becomes clear."

---

[3]Tenn. Code Ann. § 47-14-121 provides, in pertinent part, as follows:

> Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; . . .

III.

The issues in this case bring into play the following UM coverage language of the subject policy:

**INSURING AGREEMENT**

A.      We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; . . .

\*    \*    \*

**LIMIT OF LIABILITY**

A.      The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.

\*    \*    \*

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

(Bold lettering in policy). Damages under the UM feature of the policy are not further defined in the policy. As previously noted, the policy at issue limits the UM coverage for bodily injury for each person to $50,000. There is a total limit for each accident of $100,000.

The insuring agreement for the *liability* feature of the policy includes the following provision pertaining to damages recoverable under that part of the policy:

-4-

Damages include prejudgment interest awarded against the "insured."

The policyholder argues that, since the definition of damages in the *liability* part of the policy expressly includes "prejudgment interest" while the reference to damages in the *uninsured motorist* feature of the policy contains no such explicit reference, damages under the UM coverage do not include prejudgment interest and, therefore, there is no violation of the policy's terms by adding such interest to the "maxed out" damages award of $50,000 in the instant case.

The UM carrier does not dispute the trial court's finding that *equity* would militate in favor of an award of prejudgment interest in this case. However, it argues that the court below was correct in holding that such an award was not proper in this case because the addition of such an award to the already-existing $50,000 judgment would cause the total award to exceed the limit of UM coverage contracted for by the parties.

The UM carrier contends that the limit of liability provided for under the contract is clear. It points to the language of the policy and argues that it states, unequivocally, that $50,000 "is the most we will pay. . . ." The UM carrier argues that this language speaks for itself and that the $50,000 limit is exactly that, even with respect to the subject of prejudgment interest.

The UM carrier also addresses the policyholder's "negative inference" argument. It contends that if the policyholder's argument is correct, then the UM section of the policy offers no coverage whatsoever for prejudgment interest awards. It points out that its liability in this case is entirely derivative of the judgment entered against the uninsured motorist. If prejudgment interest is a claim against the UM carrier for failure to pay the claim earlier and not connected to the negligence of the uninsured motorist, then prejudgment interest is not derivative of the uninsured motorist's negligence. If this be the case, according to the UM carrier, prejudgment interest is not covered at all under the terms of the UM section of the subject policy.

The UM carrier also responds to the policyholder's public policy argument. It asserts that the policy rationale for postjudgment interest is not logically transferable to the subject of prejudgment interest. In addition, it points out that the policyholder does not allege that it was guilty of bad faith or breach of contract. The UM carrier concludes that, absent some allegation of such conduct, the policy rationale cited by the policyholder for prejudgment interest is not implicated by the insurance company's decision not to settle.

IV.

This case presents a question of law. "[W]hen there is no conflict in the evidence as to any material fact, . . . , the question on appeal is one of law, and our scope of review is *de novo* with no presumption of correctness accompanying the [trial court's] conclusions of law." **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

It is clear that the automobile insurance policy in this case is a contract between the policyholder and Harleysville Mutual Insurance Company. Insurance policies are construed in accordance with the rules and principles applicable to contracts generally. *See Guardian Life Ins. Co. of America v. Richardson*, 23 Tenn. App. 194, 207, 129 S.W.2d 1107, 1115-16 (1939). In *Guardian*, we stated the applicable law:

> Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, compliance with which is made the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.

*Id*. (citations omitted).

## V.

## A.

The policyholder's reliance on our opinion in *Goff* and other postjudgment interest cases is misplaced. There are fundamental differences between postjudgment interest and prejudgment interest that belie the policyholder's assertion that the postjudgment interest cases, by analogy, support an award of prejudgment interest in this case.

Postjudgment interest is mandatory. *Vooys v. Turner*, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001). It is imposed by statute, Tenn. Code Ann. § 47-14-121, "on judgments." Tenn. Code Ann. § 47-14-122 (2001) provides that such "[i]nterest *shall* be computed on *every* judgment . . . ." (Emphasis added). Once the amount of the judgment has been established, it bears interest at the statutory rate of 10% "except as may be otherwise provided or permitted by statute." Tenn. Code Ann. § 47-14-121. If the exception does not apply, the statute makes the add-on of 10% interest mandatory; a court is without authority to relieve a debtor of its statutorily-mandated postjudgment interest obligation. *Inman v. Inman*, 840 S.W.2d 927, 931 (Tenn. Ct. App. 1992); *Bedwell v. Bedwell*, 774 S.W.2d 953, 965 (Tenn. Ct. App. 1989). As the *Goff* opinion holds, postjudgment interest is "in addition to the limits of coverage." *Goff*, 1994 WL 585771, at *2.

Prejudgment interest is very different. Rather than being a mandatory obligation, its imposition is clearly subject to the sound discretion of the trial court or jury, as the case may be. *See* Tenn. Code Ann. § 47-14-123 ("*may* be awarded . . . in accordance with the principles of equity") (emphasis added). *See also **Myint v. Allstate Ins. Co**.*, 970 S.W.2d 920, 927 (Tenn. 1998). In addition, and of great significance in this case, prejudgment interest is defined as "an element of, or in the nature of, *damages*." Tenn. Code Ann. § 47-14-123 (emphasis added). In our opinion, prejudgment interest is nothing more than an element of damages chargeable against a *defendant*, in this case the uninsured motorist. As an "element of . . . damages," prejudgment interest is necessarily a calculation that is made in *arriving* at the amount of the judgment. As previously noted, postjudgment interest comes into play only after the judgment has already been established.

Tenn. Code Ann. § 47-14-121 and the cases, such as **Goff**,[4] interpreting it are not authority for the policyholder's argument that prejudgment interest can be added to a judgment against a UM carrier even though to do so is to enlarge the UM carrier's liability beyond the limit of UM coverage in the policy.

B.

The policyholder next argues that the concept of "damages" alluded to in the UM coverage does not include prejudgment interest. Thus, so the argument goes, there is no violation of the policy's terms by adding prejudgment interest to the maximum limit of "damages."

Contrary to the policyholder's assertion, there is no ambiguity in the policy pertaining to the issue of prejudgment interest. The UM coverage extends to "*all* damages." (Emphasis added). As we have previously noted, prejudgment interest, by the language of the applicable statute, is "an element of, or in the nature of, damages." Tenn. Code Ann. § 47-14-123. In the instant case, the UM carrier contracted to pay "all damages." Prejudgment interest is an element of damages. Therefore, prejudgment interest is covered by the language of the policy pertaining to that which can be recovered under the UM coverage.

We reject the policyholder's argument that the language "all damages" does not include prejudgment interest. We also reject the policyholder's argument that the reference to prejudgment interest in the damages section of the *liability* feature of the policy in some way means that prejudgment interest is not a part of "all damages" under the UM coverage. Under the liability feature of the policy, prejudgment interest is a part of the covered damages because the policy says it is. Under the UM coverage, it is a part of the covered damages because "all damages" means just that, all damages, and, by statute, prejudgment interest is an element of the injured party's damages.

---

[4]We recognize that the **Goff** Court stated that the "*statutes* regulating interest . . . impose liabilit[y] in addition to the limits of coverage." (Emphasis added). However, this language must be read in the context of the facts in **Goff**. *See **National Life & Accident Ins. Co. v. Eddings***, 188 Tenn. 512, 523, 221 S.W.2d 695, 699 (1949) ("It is a maxim not to be disregarded that general expressions, in every opinion are to be taken in connection with the case in which those expressions are used." (quoting **Cohens v. Virginia**, 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257, 290. (1821))). We limit the holding in **Goff** pertaining to interest to the subject of postjudgment interest.

C.

The policyholder argues that the trial court's judgment is at odds with a public policy underlying the prejudgment interest statute. She contends that the statute embodies a policy encouraging the prompt settlement of claims with merit. She argues that if the lower court's judgment is allowed to stand, it will, in effect, deprive an insurance company of any incentive to settle a meritorious UM claim objectively worth more than the limit of coverage under the policy. We disagree.

In general terms, an insurance company has an incentive to settle a UM claim with merit in order to eliminate the possibility of a damage award that includes prejudgment interest. When the value of a UM claim arguably exceeds the UM limit of coverage, the insurance company still has motivation to settle for a number of reasons, not the least of which is fear of the imposition of a bad faith penalty under Tenn. Code Ann. § 56-7-105 (2000).[5] In any event, we hold that the conclusion reached by the trial court with respect to prejudgment interest does not violate an established public policy of this state.

D.

The policyholder cites a number of cases from other jurisdictions. In our judgment these cases are not authority for the positions asserted by the policyholder in this case.

---

[5]Tenn. Code Ann. § 56-7-105(a) provides as follows:

> The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

In ***Cox v. Peerless Ins. Co.***, 774 F. Supp. 83 (D. Conn. 1991), a federal court, applying a Connecticut statute,[6] imposed prejudgment interest, noting that "[a]n award of prejudgment interest arises from a defense attorney's strategic decision to reject an offer of settlement, and proceed to trial." ***Id***. at 86. Under the Connecticut statute, however, a court is required to impose interest when the plaintiff recovers "an amount equal to or greater than the sum certain stated in [the plaintiff's] 'offer of judgment.'" Tennessee does not have a similar statute. We do not find the ***Cox*** case persuasive on the facts before us. Three other cases cited by the policyholder, ***Sotelo v. Washington Mut. Ins. Co.***, 734 A.2d 421 (Pa. Super. Ct. 1999), ***Vasquez v. LeMars Mut. Ins. Co.***, 477 N.W.2d 404 (Iowa 1991), and ***Potomac Ins. Co. v. Howard***, 813 S.W.2d 557 (Tex. App. 1991),[7] involve direct actions against insurance companies for breach of contract. None of these cases are implicated by the facts now before us.

## VI.

The judgment of the trial court is affirmed. This matter is remanded to the trial court for enforcement of the judgment below and for collection of costs assessed in the trial court, all pursuant to applicable law. Costs on appeal are taxed to Teresa Malone.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[6]The Connecticut statute provides, in pertinent part, as follows:

> (a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written "offer of judgment" signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain . . . .
>
> * * *
>
> (b) After trial the court shall examine the record to determine whether the plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his "offer of judgment", the court shall add to the amount so recovered twelve per cent annual interest on said amount computed . . . . from the date the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the "offer of judgment" was filed . . . .

Conn. Gen. Stat. Ann. § 52-192a (West, WESTLAW 1991).

[7]This case also involves a tort claim under Texas law.